## Case No. 7,869.

### KLEINE v. CATARA.

### [2 Gall. 61.] [1]

Circuit Court, D. Massachusetts. May Term, 1814.

ARBITRATION AND AWARD — RECOMMITTAL—POWERS OF REFEREES—CHARTER PARTY—FREIGHT.

1. In awards, the judgment of the arbitrators, or referees, is conclusive upon all matters of fact. If, however, there be a mistake of fact (as in calculation) apparent upon the face of the award, or if the referees are satisfied of a mistake of fact. though not apparent on the face of the award, and certify their wish to correct it, the award will be recommitted to rectify the mistake. But such a mistake is no ground to set aside an award.

See Greenough v. Rolfe. 4 N. H. 357; Roosevelt v. Thurman, 1 Johns. Ch. 220; Johns v. Stevens, 3 Vt. 308.

2. Referees are judges, as well of the law as of the fact. If no reservation is made in the submission. the parties are presumed to agree. that every thing, both as to law and fact, necessary for the decision. is included in the authority of the referees. Under a general submission, therefore, the referees have rightfully a power to decide on the law, and on the fact. Under such a submission, the referees are not bound to award on dry principles of law, but they may award according to equity and good conscience.

[Cited in Myers v. York & C. R. Co., Case No. 9,997.]

[Cited in Indiana Cent. R. Co. v. Bradley. 7 Ind. 55; Johnson v. Noble, 13 N. H. 291; Griffin v. Champlain Mut. Fire Ins. Co., 50 Vt. 463.]

3. If referees refer a point of law to the court by spreading it on the award. and mistake the law, the award will be set aside. If they admit the law, but decide contrary thereto upon principles of equity and good conscience, although such intent appear on the face of the award, it is no ground to set it aside.

See Hazeltine v. Smith. 3 Vt. 535: Stevens v. Pearson. 5 Vt. 503; Jocelyn v. Donnel. Peck [Tenn.] 274; Bliss v. Rollins, 6 Vt. 529.

4. If they make a general award, it cannot be impeached collaterally. or by evidence aliunde, for mistake of law or of fact. for the judgment of the referees is conclusive in both respects, unless there be fraud or misbehavior.

[Cited in Johnson v. Noble, 13 N. H. 290; Fairchild v. Adams, 65 Mass. (11 Cush.) 551.]

See Hall v. Merriman, 1 Root, 197; Johns v. Stevens, 3 Vt. 308; Walker v. Sanborn. 8 Greenl. 288; Lutz v. Linthuam. 8 Pet. [33 U. S.] 165: Smith v. Thorndike. 8 Greenl. 119; Jones v. Boston Mill Corp., 6 Pick. 148; Newburyport Marine Ins. Co. v. Oliver, 8 Mass. 410; Bigelow v. Newell. 10 Pick. 348.

5. If in a charter party. there be a covenant to proceed to a foreign port. and take in a cargo there on account of the charterer, and return therewith to the United States. for a stipulated hire. and the ship go to the foreign port. and the charterer declines to put any cargo on board. the owner of the ship is not bound to come home empty, but may engage in another voyage, and take another cargo for the United States, on freight. and the freight so earned cannot be claimed by the charterer.

[Cited in Drinkwater v. The Spartan. Case No. 4,085; Clarke v. Crabtree. Id. 2,847; Hart v. Shaw, Id. 6,155; The Gazelle, 128 U. S. 474, 9 Sup. Ct. 142.]

[Cited in Costigan v. Mohawk & H. R. Co., 2 Denio. 614.]

---

1 [Reported by John Gallison, Esq.]

6. Where the whole consideration for any stipulation fails. or it becomes incapable of being performed substantially as the parties intended, by the voluntary act of one of the parties. the other is not bound to proceed, but may decline a performance on his part.

[Cited in brief, Hustin v. Richards, 44 Me. 183.]

7. If, by the terms of the charter party, the ship is to be navigated at the charge and expense of the owner. and especially if the whole tonnage of the ship is not let to hire, the charterer is not owner for the voyage.

[Cited in Palmer v. Gracie. Case No. 10,692; Hill v. The Golden Gate, Id. 6,492.]

8. If the submission be general, and the award be of a particular thing, it will be presumed that nothing else was in controversy, unless the contrary should appear. In the latter case, the award will be recommitted to the referees.

[Cited in Bush v. Davis, 34 Mich. 198.]

The material facts in this case were as follows: Catara was owner of the Greek ship Jerusalem, which arrived at New York with a cargo of wine. On the 16th of May, 1813, a charter party was entered into between the plaintiff, and the master of the ship on behalf of Catara, whereby the whole tonnage of the hold and between decks of the ship was let to the plaintiff from the port of Havana to New York, or, in case of a blockade of that port, to Fairfield in Connecticut. It was further agreed, that the ship should sail from New York to Havana, with so much of the imported cargo of wine, as the owner, Catara, should think proper to export for his sole account and risk; the wine to be consigned to the order of the plaintiff there, to be sold for account of Catara, and the proceeds to be vested in sugars to be laden on board of the ship. on the return voyage, for the same account and risk. The remainder of the ship's hold and between decks to be entirely loaded by the agent of the plaintiff, at the rate of one dollar per quintal of 112 lbs. net weight, for sugars, and every other produce, with 2½ per cent. primage, payable on the delivery of the cargo at the port of destination in the United States. It was further agreed, that that part of the return cargo. belonging to the owner of the ship, should be consigned to the plaintiff. and that the plaintiff might deduct from the proceeds of the sales thereof, and from the freight due on the return voyage, all sums paid by him for advances, insurances, &c. on account of the owner of the ship. with interest; and that. if any part of the wine should remain behind unsold at Havana, the net proceeds should be remitted to the plaintiff by some other vessel. The plaintiff further agreed, in case the wine should not sell immediately on its arrival, to cause to be advanced to Catara, two thirds of the reputed value thereof in Havana, in sugars, at the market price, after deduction of charges; which sugars were to be laden on board of the ship on account of the owner, and to be consigned to the plaintiff. and the plaintiff was to receive, on all sales of the return

cargo, six per cent. commission. The plaintiff further agreed to effect insurance on the voyage according to the instructions of Catara, and the policies were to remain in his hands, as collateral security for advances made to Catara. And the master, in behalf of Catara, further agreed to victual, man, equip and navigate, the ship, &c. during the voyage, at the cost and charge of the owner. In pursuance of this charter party, the ship sailed on the voyage to Havana, and safely arrived there. The plaintiff gave written directions to Drake, his supposed agent there, to comply with the stipulations of the charter party. Drake, however, upon application to him, disavowed the agency, and refused to make any advance on the wine, or to put any cargo on board, as the plaintiff's agent, for the return voyage. By a new agreement, however, a return cargo was put on board by Drake, on the account and risk of, and with a consignment to, strangers to the charter party, and with this cargo the ship sailed for the United States, was captured on the voyage, carried into Halifax, and, after being restored on payment of expenses. finally arrived at Boston, where the cargo was discharged. The freight of the return cargo amounted to about $5000 more than that stipulated in the charter party. The action was assumpsit to recover a balance due for advances. Credit was given for the freight due to Catara by the charter party, and the plaintiff claimed a right to the surplus freight, earned on the return voyage, for his own account. The parties under a rule of court, submitted "this action, and all demands, which the defendant had against the plaintiff," to arbitrators, who awarded $3175.61 to Kleine "in full satisfaction of all Kleine's demands submitted to them;" they then went on specially to state as the ground of their award, that James Drake, the agent of Kleine, having neglected to comply with the stipulations of the charter party at Havana, the referees considered Catara thereby exonerated from all obligation under the contract. A motion was made to set aside this award, on the ground, that the referees had committed mistakes in point of law, and had not awarded upon all the matters submitted to them.

S. K. Williams. for plaintiff. made the following objections to the award:

1. The referees have mistaken the construction of a legal instrument.

2. They have mistaken the law, in deciding. that by the neglect or refusal of Kleine's agent to execute the terms of the charter party in Havana, Catara was discharged from the obligation of the contract. whereas the only effect was to give a right to damages against Kleine. Puller v. Staniforth. 11 East, 235; Bell v. Puller, 12 East, 496 (in note); Pordage v. Cole, 1 Saund. 320 (note per Williams, 4).

3. That the award is not in full of all demands of Catara against Kleine. This was said to be suggested as matter of form only, which might be amended.

To show that the court had authority to set aside the award for a mistake in point of law, Mr. Williams cited Kyd, Awards, 351–380; Kent v. Elstob, 3 East, 18; Chace v. Westmore, 13 East, 357; Williams v. Craig, 1 Dall. [1 U. S.] 313.

G. Blake, Dist. Atty., for defendant.

The nature of the action is liberal and open, resembling a bill in equity. All the principles of equity, therefore, are applicable to this case.

Although it is true in general, that when the referees have mistaken a plain point of law, (or of equity, if intending to proceed by equity,) the award, upon the face of which such mistake is apparent, is to be set aside, yet. whenever substantial justice appears to have been done, the award will be established. And though an award may not conform to the rules of law, yet if equity is adhered to, the court will not set it aside. Have the referees in this case stated, as the ground of their award, positions, which are not tenable? The stipulation contained in the charter party, for the advance of two thirds of the value of the wine in Havana, in case the wine should not sell there. was a principal inducement for making the contract on Catara's part; the freight being low, Catara's agent must have had some other profit in view. Was not then the owner discharged from the obligation of the charter party by the failure of Kleine to comply with this stipulation? If discharged, he was entitled to the future earnings of the ship.

It is argued on the other side, that Catara should have returned with an empty ship, and looked to the charterer for his indemnity. Though much is said in the books on the distinction between dependent and independent covenants, yet such a principle cannot be applicable to mercantile transactions. In the case of freight. for instance, the failure to provide a return cargo ought to discharge the ship owner, since he looks to such cargo, as the security for his freight. It is therefore contended, on behalf of the defendant. that by the non-fulfilment of the stipulation to advance two thirds of the value of the wine, he was rightfully discharged from any further observance of the conditions of the charter party, and that the referees have not mistaken the law, as to this point. Sicletari, the agent of Catara, having taken up another freight for home, consigned. not to Kleine, as the return cargo was to have been by the terms of the charter party. but to a stranger to the contract. this was a freight, to which Kleine could have no title. Suppose a vessel chartered for the East Indies, and a stipulation for an advance there to purchase a return cargo, which advance the charterer fails to make; must the ship return empty?

STORY, Circuit Justice. If she return full, it will be a deduction from the damages, to which the owner would otherwise be entitled against the charterer.

Mr. Blake. This we admit, and Kleine will have all the benefit of such allowance upon the principles contended for by the defendant. It is immaterial upon what principles the referees calculated the balance due, since, had they adopted the principle, that Kleine was entitled to freight, and Catara to damages, the result would not have been more favorable to Kleine. It is to be considered, whether the charter party was not void ad initio, Sicletari, who made it, having no written authority, nor any authority, but what his capacity of master gave him, and Catara, having from the first disclaimed the act.

(Mr. Blake was proceeding to argue this point, but was stopped by the court, this not appearing upon the award to be one of the grounds, upon which the referees had decided.)

In an action of this sort, where the charter party is introduced merely as a piece of evidence, to show that a certain sum of money ought equitably to be paid to the plaintiff, the court will not proceed upon the same strict maxims, as in an action of covenant on the charter party.

Mr. Prescott, in reply.

There are two questions: 1. Did the referees mistake the law upon the face of the proceedings? 2. If so, can the plaintiff avail himself of that mistake? Is the covenant, to advance two thirds of the value of the wine, a condition precedent, the non-performance of which discharges Catara? The vessel, as to all the use that could be made of her, was in fact Kleine's. He had a right to do with her, as he pleased, only permitting Catara to put on board the proceeds of the wine. It is now contended, that by not furnishing the means of doing this, Kleine discharged Catara from all that the latter had bound himself to do by the contract. The stipulated advance was not a condition precedent. The other covenants on Kleine's part, to make insurance, &c. were before it in order of time, and were actually performed. So, on the other hand, Catara's covenant to proceed to Havana was performed. Kleine had a right, immediately on the arrival in Havana, to put on board a cargo, without first making the advance. The advance is not to be considered alone. It is a universal principle, never departed from, that where the consideration is in part performed, the failure to perform the other part shall not release the opposite covenant.

It has been contended on the other side, that there was a virtual covenant by Kleine to load the ship, and that his not loading her discharged Catara. But the instrument is not to be so construed. The whole extent of the covenant is, that he will pay the hire, and it is at his discretion to put on board more or less, or nothing. It is not material to Catara, his freight being the same. It is, however, evident, that the referees allude, not to this stipulation, but to that respecting the advance; and the only question is, whether a failure in this could discharge Catara? There can be no doubt, that for this failure, if unexcused, Kleine is answerable to Catara. But suppose Kleine had failed to make the insurance, which he stipulated to make, and a partial loss had occurred. Then, too, he would have been liable to Catara. But would Catara have been discharged from his covenants in the West Indies? The non-performance of a covenant does not operate a release, unless it be precedent and necessary to the performance of the covenants of the opposite party. In the present case, Catara, or his agent, might do every thing stipulated on their part, though Kleine should not fulfil his covenant to load. He might have returned empty, and there would then have been no difficulty; but he chose to contract for a freight. This freight is Kleine's. The vessel was his for the voyage. He had a right to load her or not, at his option, and a right to all freight earned by her. As it respects security, there was enough in the contract itself. It was such as Catara was contented with. It may well be doubted, whether he would have had any lien on the cargo, even if he had brought one home, the vessel having been hired by a charter party, which differs from a mere letting to freight. Kleine might have put on board stones, or any other thing of no value.

(STORY, Circuit Justice, said, he had no doubt that when the charterer becomes owner for the voyage, there is no lien of the general owner for freight. It is confined to cases, where the carrier for freight is also owner for the voyage.)

STORY, Circuit Justice. In this case, a submission having been made "of this action and all demands, which the defendant has against the plaintiff," the referees have made a special award, stating the grounds and principles of their award. A motion has been made to set aside this award on the ground, that the referees have committed mistakes in point of law, and have not awarded upon all the matters submitted to them. In support of these objections, it has been argued, that if the referees mistake in a plain point of law or fact, either apparent upon the award itself, or made out in proof, the court ought to set aside the award. To the generality of this position we by no means accede. The clear result of the authorities is that the judgment of the referees is conclusive upon all matters of fact. Price v. Williams, 1 Ves. Jr. 365; 3 Browne, Ch. 163; 1 Browne, Ch. 117, 536; Morgan v. Mather, 2 Ves. Jr. 15; Dick v. Milligan, Id. 23. And upon principle, it seems difficult to hold another doctrine, without destroying the whole object, as well as the authority, of the arbitration. If, however, there be an error of

fact, as a mistake in calculation, apparent upon the face of an award, or if referees are satisfied, that such a mistake has intervened, and wish to correct the error, although the court will not set aside the award, yet it will recommit it, to rectify the mistake. As little · do we incline to accede to the generality of the doctrine, as to mistakes in matters of law. It is certainly competent for the parties to submit the law, as well as the facts, to the judgment of referees, and to agree to abide by their judgment. There is neither inconvenience nor impolicy in supporting such an agreement. It is only substituting judges of the parties' own choosing for those, who regularly administer the law of the land. If the parties wish to reserve the law for the decision of the court, they may stipulate to that effect in the submission; they may restrain or enlarge its operation, as they please. If no such reservation is made in the submission, the parties are presumed to agree, that every thing, both as to law and fact, which is necessary to the ultimate decision, is included in the authority of the referees.

Under a general submission, therefore, the arbitrators have rightfully a power to decide on the law and the fact; and an error in either respect ought not to be the subject of complaint by either party, for it is their own choice to be concluded by the judgment of the arbitrators.[2] Besides, under such a general submission, the reasonable rule seems to be, that the referees are not bound to award upon the mere dry principles of law applicable to the case before them. They may decide upon principles of equity and good conscience, and may make their award ex aequo et bono. S. P., Wood v. Griffith, 1 Swanst. 43. 55; S. P., Steff v. Andrews, 2 Madd. 6. We hold, in this respect, the doctrine of Lord Talbot in South Sea Co. v. Bumstead (2 Eq. Cas. Abr. 80, pl. 8); of Lord Thurlow in Knox v. Symmonds (1 Ves. Jr. 369; S. P., In re Badger, 2 Barn. & Ald. 691; 2 Story, Eq. Jur. § 1450–1458, and cases

2 In Chace v. Westmore, 13 East. 358. Lord Ellenborough says. "I fear it is impossible to lay down any general and certain rule upon this subject in what cases the court will not suffer an award to be opened; it must be subject to some degree of uncertainty, depending upon the circumstances of each case." Sharman v. Bell, 5 Maule & S. 504. And in that case, the law and fact having been referred to a person competent to decide upon both, the court refused to open the award, unless some misconduct could be shown on the part of the arbitrator. So in the civil law, "qualem sententiam dicat arbiter ad praetorem non pertinere Labeo ait; dummodo dicat quod ipsi videtur." Paulus, ff. iv. 8, 1. 19. And the only exceptions were, "Si inhonestum quid jusserit arbiter—vel ex gratia aut odio male judicarit" (Heinec. ad ff. Pars, i. § 541); "aut compromissi fines praetergressus, ea definierit, quae ejus arbitrio nonerant commissa" (Voet. ad ff. iv. 8, § 24). But a distinction is to be observed in the civil law, between the arbitrator and arbiter. The award or sentence of the former was subject to correction or reduction "ad arbitrium boni viri." The difference between them is explained. Wood's Inst. 326; and see Voet. on the Pandects, l. iv. tit. 8, § 25.

cited); of the king's bench in Ainslie v. Goff (Kyd, Awards, 351); and of the common pleas in Delver v. Barnes (1 Taunt. 48). If, therefore, under an unqualified submission, the referees meaning to take upon themselves the whole responsibility, and not to refer it to the court, to decide differently from what the court would on a point of law, the award ought not to be set aside. If, however, the referees mean to decide according to law, and mistake, and refer it to the court to review their decision, (as in all cases, where they specially state the principles, on which they have acted, they are presumed to do,) in such cases, the court will·set aside the award, for it is not the award, which the referees meant to make, and they acted under a mistake. On the other hand, if knowing what the law is, they mean not to be bound by it, but to decide, what in equity and good conscience ought to be done between the parties, their award ought to be supported, although the whole proceedings should be apparent on the face of the award. And this, in our opinion, notwithstanding some contrariety, is the good sense to be extracted from the authorities. Morgan v. Mather, 2 Ves. Jr. 15; Ching v. Ching, 6 Ves. 282; Young v. Walter, 9 Ves. 364; Kent v. Elstob, 3 East, 18; Delver v. Barnes, 1 Taunt. 48; Chace v. Westmore, 13 East, 357; Ainslie v. Goff, Kyd, Awards, 351. In Morgan v. Mather, Lord Loughborough lays it down as clear, that corruption, misbehavior, or excess of power, are the true grounds for setting aside awards; and although in the same case Mr. Commissioner Wilson says, that arbitrators cannot award contrary to law, because that is beyond their power, for the parties intend to submit to them only the legal consequences of their transactions and agreements; yet this reasoning is wholly unsatisfactory, not only from its begging the question, but from its being in direct opposition to very high authority. See Underhill v. Van Cortlandt, 2 Johns. Ch. 339; Todd v. Barlow, Id. 551.

If, in the case before the court, the referees had made a general award, without any specification of the reasons of their decision, it would have deserved very grave consideration, whether we could, by collateral evidence, have examined into the existence of any errors of law. We are not prepared to say, that such a course would be proper, unless the submission were restrained to that effect, or misbehavior were justly imputed to the referees. But here the referees have expressly laid the grounds of their decision before us, and have thereby submitted it for our consideration. This course is not much to be commended. Arbitrators may act with perfect equity between the parties, and yet may not always give good reasons for their decisions; and a disclosure of their reasons may often enable a party to take advantage of a slight mistake of law, which may have very little bearing on the merits. A special award, therefore, is very perilous; but when

it is once before the court, it must stand or fall by its intrinsic correctness, tested by legal principles.

We will now consider, how far the present award can be sustained upon these principles; and in order to apply them, it will be necessary to consider, what are the material facts, upon which the award is founded.

(Here the Hon. Judge recapitulated the facts above stated.)

Upon these facts, which, so far as the present questions are concerned, are to be deemed to have been fully proved, the arbitrators decided, that Mr. Drake, the agent for the plaintiff at the Havana, having neglected and refused to execute the charter party, agreeably to the letter and spirit thereof, the defendant was of right discharged from any further observance of its conditions; that the plaintiff had no just or legal claim to any of the freight or earnings of the vessel, on her voyage from Havana to Boston; and that he, in equity, was entitled to a reimbursement of his advances, with interest and customary commissions, and upon these principles they found a balance in his favor of $3175.65. It is argued, that the arbitrators have erred in both these particulars; that the omission to comply with the stipulations on the part of the plaintiff did not discharge the defendant from his obligation to perform those on his part, but only rendered the plaintiff liable to pay damages to the defendant; and that, under the charter party, the plaintiff must be deemed to have been owner of the ship for that voyage, and as such was entitled to all her freight and earnings. Upon the true construction of the charter party, there was a covenant on the part of the plaintiff, not only to advance the defendant two thirds of the estimated value of the wine, but also entirely to load that part of the ship, which was chartered by him, at the stipulated price per quintal. He wholly failed so to do, and thereby became liable, in case the ship returned empty, to pay the whole freight, which would have been earned, if he had complied with his covenant. This seems to be the doctrine of the maritime law. Roccus de Nav. note 85; 1 Valin, Comm. 642; Beawes, tit. "Freight," 110. (129). And it does not in effect differ from the common law. Abb. Shipp. p. 3. c. 7, § 2; Edwin v. East India Co., 2 Vern. 210. But the question here is, whether the ship is, under such circumstances, bound to return empty, and the owner obliged to pursue the voyage, although its whole objects are defeated, and look for recompense to the event of a suit for damages. It is said, that such is the conclusion of law, unless the court shall construe the covenants in the charter party, as dependent covenants. We do not yield, however, to this argument, and no authority has been cited in support of it. Admitting the covenants to be independent and reciprocal, it does not follow that either party is bound to go on, when the whole objects of the agreement are defeated by the voluntary act of the

other. In short, the principle would come to this, that on a covenant to carry a full cargo to a port at a stipulated hire, the owner of the ship would be obliged to perform the voyage, although the merchant utterly refused to furnish any cargo, or became incapable of so doing. On the one hand, if such a covenant were to be deemed a case of dependent covenants, the owner of the ship would not be compellable to proceed on the voyage, if any thing, however small, short of a full cargo, were furnished. On the other hand, upon the same reasoning, if the contract were to carry a full cargo, and less were carried, by the neglect of the owner of the ship, no freight would be due for the cargo actually transported. Yet such a construction would be in utter hostility to decided cases. Ritchie v. Atkinson, 10 East, 295. From the reason of the thing, therefore, covenants of this kind have been, in general, deemed independent; but even then a total failure by one party, going to the whole consideration of the contract, would be sustained as a bar to an action for non-performance by the other. Havelock v. Geddes, Id. 555. The correct principle, in contracts of this nature, would seem to be, that where the whole consideration for any stipulation fails, or where any stipulation becomes incapable of being performed substantially in the manner which the parties intended, by the voluntary act of either of them, the other party is not bound to proceed, but is at liberty to decline a performance thereof on his part. Equity would certainly persuade us to such a conclusion, and it will be found on examination, that it comports with law. Molloy (book 2, c. 4, § 3) holds, that if a time be appointed by the charter party, and the merchant is not ready to load the cargo, the other party is at liberty to seek another cargo, and hath his remedy for damages: and this doctrine is cited and approved by Abbott on Shipping (part 3. p. 225, c. 1, § 8), and seems confirmed by Roccus (De Nav. note 85). It seems also to have been conceded by all sides to be correct in Laurie v. Jamieson, Abb. Shipp. pt. 3, p. 230, c. 1, § 10, and stands supported by the decision in Bell v. Puller, 2 Taunt. 285. See, also, Puller v. Halliday, 12 East, 494. Indeed Abbott insists, that in such a case it would be the duty of the master, on his arrival at the port of lading, to obtain another cargo, if possible, from other persons, and not sullenly to hoist sail and depart, in order to charge the merchant with the whole freight. Abb. Shipp. pt. 3, p. 457, c. 11, § 3. And the supreme court of New York, in Robertson v. Bethune, 3 Johns. 342, have decided, that when the return cargo was not ready to be put on board at the appointed time, from that moment the contract terminated to all intents and purposes, and both parties were absolved from all future liability under it. This is indeed pressing the doctrine to a greater extent, than we deem necessary for the present decision.

Upon the footing then of authority, as well

as of principle, we think that the neglect of the plaintiff to furnish a cargo pursuant to the charter party, absolved the defendant from a further prosecution of the voyage, if he should so elect; and enabled him rightfully to engage another cargo for another voyage. We think that sound policy and mercantile convenience, equally with the interests of all parties, and the principles of distributive justice, fully support us in this conclusion. In this respect, there is no error of law in the award of the referees, for they have not in effect held a more extensive doctrine.

This view of the subject might well dispose of the second objection; but we think it admits of a satisfactory answer upon other grounds. The argument, that the plaintiff was owner of the ship for the voyage, and therefore the freight earned was for his account, is utterly untenable. So far was he from being owner for the voyage, that the whole ship was not even chartered to him. He had a right only to the use of the hold, and also of the part between decks of the ship. The ship was also navigated at the expense of the original owner, and the master was appointed by him. There was therefore no general hiring in the charter party; but a mere special hiring of the ship to bring a cargo to the United States. The authorities, both in England and the United States, are decisive against the plaintiff as to this point. Vallejo v. Wheeler, Cowp. 143; Hooe v. Groverman, 1 Cranch [5 U. S.] 215; McIntyre v. Bowne, 1 Johns. 229; Fletcher v. Braddick, 5 Bos. & P. [2 Bos. & P. (N. R.)] 182; Cheriot v. Barker, 2 Johns. 346; Puller v. Halliday, 12 East, 494. And particularly Marcardier v. Chesapeake Ins. Co., 8 Cranch [12 U. S.] 39. Vide, also, Hutton v. Bragg, and the cases there cited; 2 Marsh. C. P. 339; Frazer v. Marsh, 13 East, 238. There is no ground therefore to consider the master as the agent of the plaintiff and contracting for his benefit under the new affreightment entered into at the Havana, for, whether the new voyage were tortious or rightful, the earnings of the ship belonged to the original owner. If rightful, then he would take them without account to the charterer; if wrongful, then he would only be responsible for the tort in damages. Being of opinion, that the conduct of the master was in this case rightful, we over-rule the objection to the award of the referees, on the question of the freight earned on the return voyage.

The only objection remaining is, that the award is not as extensive as the submission. The award is only as to the demand of the plaintiff submitted in this action, whereas the submission was also of all demands, which the defendant had against the plaintiff. Where

the submission is of general matters, without any clause that the award shall be made of the premises submitted (which is technically called an "ita quod," &c.) it seems to have been holden, that an award of a part only of the premises submitted is good, at least if the matters omitted were not necessarily dependent upon and connected with the other points. Baspole's Case, 8 Coke, 98; Cro. Jac. 200, 355; Simmonds v. Swaine, 1 Taunt. 549. Perhaps the more reasonable rule, countenanced by respectable authority, is, that the arbitrators are bound to award upon all matters within the submission, which are actually controverted before them, whether there be such a special clause of "ita quod," &c. or not.[2] Be this as it may, it is very well established, that although the submission be general with or without a clause of "ita quod," &c. an award is good of a single matter, if none other were laid before the arbitrators,[3] and that will be presumed until the contrary is shown. Baspole's Case, 8 Coke, 98; Cro. Jac. 200, 355; Hawkins v. Colclough, 1 Burrows, 274; Ingram v. Milnes, 8 East, 445; Hodges v. Hodges, 9 Mass. 320. But if it be shown, that other matters were before the referees, on which they have not awarded, although they intended so to do, there can be no doubt, that the award ought not to be accepted. In the present case, it is admitted that such was the intention of the arbitrators, and as they have omitted to express their award with technical propriety, so as to reach every thing in controversy before them, we shall order it to be recommitted to them for this purpose. Award recommitted.[4]

[NOTE. The vessel was subsequently libeled in an action upon a bottomry bond. Case No. 7,293. It was sold upon the same, and certain payments made out of the proceeds. Case No. 7,294.]

---

[2] Saund. 33, note 1; Randall v. Randall, 7 East, 81; Ingram v. Milnes, 8 East, 445. See Gray v. Gwennap, 1 Barn. & Ald. 107. (Dig. lib. 4. tit. 8, 1. 19. § 1.—"Si de pluribus rebus sit arbitrium receptum; nisi omnes controversias finierit, non videtur dicta sententia; sed adhuc erit a praetore cogendus)."

[3] Dig. lib. 4. tit. 8, 1. 21, § 6.—"Si forte de una re sit disputatio, licet pleno compromisso actum sit, tamen ex ceteris causis actiones superesse; id enim venit in compromissum, de quo actum est." In Webster v. Lee, 5 Mass. 334, it was held to be competent for a party to a general submission to show, that a particular demand was not laid before the referees, and that, upon this being proved, an action might be maintained upon such demand.

[4] The award was afterwards amended by the arbitrators and accepted. Vide, as to authority of courts over awards, Rogers v. Dallimore, 6 Taunt. 111. See, also, 1 Harrison. Dig. tit. "Arbitration" (London, 1844), where all the English cases may be found. 1 Steph. N. P. tit. "Arbitration and Award."