Shaw C. J.
The Court are of opinion, that the exceptions cannot be sustained, and that the judgment of the Court of Common Pleas must stand affirmed.
Without dwelling particularly upon the obvious fac t, that this submission embraced many subjects of considerable difficulty, involving questions of law, of science, and of practical experience, and that it was referred to three gentlemen, two of whom are distinguished jurists, and the third, an experienced civil engineer, it may be remarked, that a decision of conti overted questions, made deliberately by judges constituted by the voluntary choice of the parties, is always to be regarded with respect, -and will be supported so far. as it can be done consistently with established rules of law. All presumptions of law are to be taken favorably for the support of an award, and the burden of proof is upon the party who would impeach it, to show the grounds for such impeachment.
The objections of the defendant, in substance resolve themselves into this, that the referees have exceeded their authority because they were bound to decide according to the legal rights of the parties, whereas it is alleged that they have not so decided.
It is unquestionably one of the fundamental rules governing the whole subject of,arbitrament, that the referees must conform to the submission under which they act. Their whole authority is derived from the act of the parties in their submission, and if they do not conform to it they act without authority.
*361 But it is an equally well settled rule, that if parties who select their own judges, do authorize them to consider and decide all questions of law arising on the hearing of the subject matter, or in more general terms, submit their respective rights depending upon considerations of law and fact, and the referees decide accordingly, such award is conclusive as well of the law as the fact; and the court, upon the return of such an award, will not inquire whether the referees thus authorized, have decided correctly upon principles of law, or not.[1] This rule is of course to be tailed with the obvious exception of a case, where the referees have referred questions of law to the court.
But it is contended, that by the true construction of this submission, it was not left to the referees to decide questions of law, because they were only authorized to decide according to the legal rights of the parties, and if they decided otherwise their award was void, and not conformable to their authority.
The Court are of opinion that this conclusion does not follow from.the clause in the submission alluded to. A reference to the general effect and terms and obvious purpose and design of this agreement will show, that the clause in question, “always having regard to the legal rights of the parties,” was intended to prescribe a rule for the government of the referees, as to the principles upon which they were called upon by the parties to decide, not as a limitation of their authority. The latter would in a great measure have defeated the purposes of the reference.
This submission is in the most comprehensive terms, embracing not merely the action and the matters included in it, but “ all matters in dispute ” ; all the respective legal rights of the parties, whether depending upon grant, prescription, usage, or statute ; with full authority to decide upon subjects past, and award damages, and provide for the future use and enjoyment, and to direct a specific performance of all such acts and measures as might be requisite to the future and perpetual use and *362 enjoyment of the legal rights, thus to be ascertained, so as to prevent future disputes and litigation. It appears to us to have been the intention of the parties, in this submission, to place their respective rights and claims fully and completely within the consideration and decision of the referees, whether those rights and claims depended upon controverted questions of fact or law, or both combined, and of course, that it was within the authority of the referees to decide upon all questions of law.
This conclusion we think is strengthened by the form of expression in which reference to the legal rights of the parties is made. And the referees u shall in all other respects determine and settle the rights of the parties in the premises, and make such special award and order such specific performance thereof, as the nature of the case may in their opinion require, always having regard to the legal rights of the parties.” It expressed the understanding of the parties, that the referees were not to go upon mere equitable or hypothetical claims, or arbitrary grounds, but upon the respective, existing, vested, legal rights. But it necessarily included an authority to inquire into and decide what those rights were, and of course to decide the questions of law upon which they depended.
2. But upon the other principal objection relied on by the defendant, we cannot perceive any error in the decision of the referees in point of law, or any ground for setting aside their award.
The defendant insists that the referees had no authority to require his dam to be kept down to the point fixed in their award, because this was not necessary to the working of the plaintiffs’ ancient mills, but only to the preservation of a mill site lower down on the plaintiffs’ land upon which no mill was actually erected, and the existence and preservation of such mill site afforded no legal ground to restrain the defendant from flowing back so as to obliterate such mill site, under the provisions of the statutes in relation to the power of flowing.
But without relying upon the fact, that all their rights and claims, whether by statute or otherwise, were embraced in the submission, the referees proceeded upon the fact, of which it is not denied that they were the exclusive judges, that before *363 the defendant built his temporary dam, or increased the height of his present dam, so as to flow the mill site in question, the plaintiffs had actually begun to cut a canal and lay down a dam, with an intent to proceed and build a mill thereon, and were so proceeding when the defendant placed his temporary dam so as to flow such mill site. They also find, that prior to that time, the defendant had acquired no right by grant, prescription or usage, to raise the water higher than the point fixed by their award ; so that his claim depended solely upon the general right belonging to him in common with all other owners on the river, so to raise and flow.
Without determining whether as a general right, and under what circumstances, limitations and conditions, a lower proprietor on a stream may raise a dam, so as to obliterate and submerge a fall higher up, and thereby prevent the erection of a mill on a suitable site, we think we are well warranted by authorities in determining, that when the upper proprietor has actually built or is building a mill thereon, a lower proprietor cannot, without a right acquired by grant, prescription or actual use, erect a new dam or raise an old one, so as to destroy the upper mill privilege, simply under a liability to pay damages, pursuant to the flowing acts, and that those acts do not reach such a case.[1]

Exceptions overruled.

 See Smith v. Thorndike, 8 Greenleaf, 119; Walker v. Sanborn, 8 Greenleaf, 288; Lutz v. Linthicum, 8 Peters, 165; Hall v. Merriman, 1 Root, 197; Kleine v. Catara, 2 Gallison, 61,70; Smith v. Hall, 2 Fairfield, 295; Adams v. Adams, 8 N. Hamp. R. 83; Greenough v. Holfe, 4 N. Hamp. R. 357.

 See Revised Stat. c. 116, §1,4; Baird v. Wells, 22 Pick. 312.