SAMUEL JENIFER *v.* COMMISSIONERS OF HAMILTON COUNTY.

(No. 2,802.)

1. An award at common law will be enforced, for the reason that the award is the agreement of the parties; if there be no agreement, there can be no award, and if the agreement be illegal and void, the award can not be enforced.

2. The county commissioners, by a submission to arbitration, can not impose an obligation on the county to disburse a particular fund, in a manner or to a purpose prohibited by statute.

3. The submission to arbitration of all questions, both law and fact, will not authorize the court to enforce an award, when it is manifest, at any stage of the cause, that the submission was unauthorized or illegal.

GENERAL TERM.—Reserved from special term upon the questions of law, arising upon a motion praying that a judgment be entered on an award.

The plaintiff, in pursuance of a contract made with the county commissioners, had constructed a turnpike known as " the extension of the Lower River road," and had received all the cash demanded by his contract, and on the completion of the road, on October 1, A. D. 1851, received the balance of $3,450, in county road bonds of that date, in form as follows:

" $100.     State of Ohio, Hamilton County.     Certificate A.
                Loan for road purposes,          No.    .
For *the use of the extension* of the Lower River road."

In accordance with the provisions of an act of the general assembly of the State of Ohio, entitled " an act for the extension of the Lower River road, in Delhi and Miami townships, Hamilton county," passed March 22d, 1850, *It is hereby certified,* that there is due to Samuel Jenifer or order, the sum of *one hundred dollars,* being a loan under the provisions of said act, for the improvement of the road herein specified; which amount is payable at any time within five years from the date hereof, as the fund applicable thereto

may be provided, out of the tolls accruing from said road, after deducting expenses of collection and keeping said road in repair, and the interest on the loan provided therefor. This certificate to bear interest at the rate of six per cent., payable semi-annually, on the first days of January and July, at the office of the treasurer of said county, upon the order of the auditor thereof, and from the fund hereinbefore recited. And for the payment of said interest, and the redemption of the principal, the tolls arising from said road, after deducting expenses and repairs, are specifically and irrevocably pledged. And it is hereby stipulated, as in said act, provided, that the said county of Hamilton shall, in no event, nor under any pretense, be responsible for the payment or redemption of this bond, or the interest accruing thereon, out of any other funds of said county, or in any way or manner whatever, except from such funds as shall be received from the accruing tolls on said road, as hereinbefore specified.

In testimony whereof, etc.

On June 2d, A. D. 1855, the plaintiff instituted the present action, to enforce the payment of the bonds so received and held by him, alleging that at the time of making the construction contract, it was also agreed by the county commissioners with the plaintiff, " that the entire tolls of the Lower River road should be appropriated to the payment and redemption of said bonds, so soon as the then existing debt due for repairs on said road should be paid." Plaintiff further alleged, " that the whole of the debts existing on said road, at the time of said contract, and at the time of issuing the bonds aforesaid, have been paid off, and were fully and finally discharged on the 2d day of September, 1852, leaving then a large surplus of said tolls on hand ; and since that time there has been collected of tolls on said Lower River road, a large amount of money, over and above a sufficient sum to pay off and discharge, and redeem the said bonds, agreeably to the said contract," and that the

defendants refuse to appropriate the said tolls to the payment of his bonds.

Pending the cause, at the June term, A. D. 1855, a reference to arbitration was ordered, by agreement of parties, whereby all matters in difference between them in that suit were submitted to the final determination and award of Joseph Cooper & William M. Robb; and it was provided, that the award should be ready, in writing, to be delivered to the said parties, on or before the first day of October, A. D. 1855, and which award and umpirage, the said parties agree, shall be entered at the next term of the court, and to such judgment or umpirage, as the case may be, no exception shall be taken.

Subsequently, on August 13th, A. D. 1855, the arbitrators made a return of their award to the court, wherein, after reciting the authority under which they had proceeded to act, then declare their finding and award, as follows:

" Now, know ye, that we, the said Joseph Cooper and William M. Robb, having taken upon ourselves the burden of said reference, and having heard, examined, and considered the allegations, witnesses, and evidences of both parties, together with the argument of counsel, do hereby award, order, and finally determine the said cause in favor of the said plaintiff, Samuel Jenifer; and, we do hereby find and award, that the sum of four thousand three hundred and twenty-five dollars (being principal and interest), is due and owing to the said plaintiff, from the said defendants. And, we further find that the contract stated in said petition is true, and that said Jenifer performed the work according to the terms of said contract: that the material allegations in said petition are true, and that a sufficient amount of money has been collected from the tolls of said road, as alleged in said petition, and paid into the treasury of the county, after the payment of the costs of repair of the Lower River road, which we find was paid September 2, 1851, together with all other costs and necessary expenses, sufficient to have paid the said Jenifer.

" And, we order the said defendants to pay the said sum of $4,325, together with the costs of this suit, as taxed by court, to the said plaintiff.

" Published as our award, this 13th day of August, A. D. 1855.                                    JOSEPH COOPER,
                                                        WM. M. ROBB."

Thereupon, the plaintiff moved for a judgment upon the award so rendered, to which the defendants interposed several objections :

1. Because the award does not state the facts found, and the conclusions of law separately.

2. Because the petition does not state facts sufficient to constitute a cause of action against the defendants, and there is nothing in the answer or award which cures the defect.

3. The facts found by the referees do not warrant their decision.

4. The award is to do an act contrary to law.

5. The award shows upon its face, a plain mistake upon the part of the referees, as to the law of the case.

6. There is a mistake in drawing the award, it does not express the intention of the parties.

The questions arising upon this motion were reserved for the consideration and decision of the judges in general term.

*Tilden, Rairden & Curwen,* for plaintiff.

*Ferguson, Long & Bradstreet,* for defendants.

GHOLSON, J., delivered the majority opinion of the court.

It appears from the papers in this case, that the county commissioners made a contract with the plaintiff, to do certain work on a turnpike road, known as the extension of the Lower River road.   The plaintiff was to be paid partly in cash, and partly in bonds.   The work was done, and the payments, as agreed, were made.   The amount of bonds delivered was $3,450, and the plaintiff claims that the com-

missioners agreed, " that the entire tolls and income of the said Lower River road should be appropriated to the payment and redemption of said bonds, so soon as the then existing debt due for repairs of said road should be paid." It is not stated or shown when, or how, by the terms of the bonds, they were to be paid or redeemed. The plaintiff claims that the debt referred to in the agreement, has been paid, and there is a balance of tolls and income sufficient to redeem the bonds, and the commissioners having " neglected and refused to appropriate the tolls of the Lower River road to the payment of said bonds and the redemption thereof, as by the said contract they were bound to do," a judgment is claimed for $3,450, with interest.

Upon looking at the acts of the general assembly, authorizing the construction of the Lower River road and the extension of the Lower River road, we think it clearly appears that those roads were intended to be distinct works, and that the tolls or income of one could not be legally appropriated to the repair or construction of the other. Above all, there is an express direction that the county of Hamilton was not to be made liable, in any form, for work done in the construction or repair of the extension of the Lower River road, on which road the work of the plaintiff was done. The result is, that if the commissioners made the contract alleged in the petition of the plaintiff, they did that for which they not only had no authority of law, but which appears to be prohibited. And if the breach of such a contract involves a charge on the county of Hamilton, it is indirectly accomplishing that which the clear and distinct enactment of the legislative authority says shall not be done.

Had the court been asked, upon the statements of the petition, for a judgment in money against the commissioners of Hamilton county, the legal objections which have been suggested would, in our opinion, have been unanswerable. It happened, however, that the parties submitted their matters in difference in this suit to arbitration, with an

13

agreement that the award should be entered as the judgment of the court. The award was made in favor of the plaintiff, and the court is asked to enter the award as its judgment, and to enforce its performance, and the only mode suggested by which it is to be enforced, is by judgment and execution for the amount found to be due by the award.

A preliminary question is presented, whether the award is to be considered as having been made under the code, or at common law ; by referees appointed by the court, or arbitrators chosen by the parties. Considered as a reference under the code, the case would present no difficulty. It appears that there was a petition and answer, and it must be considered that the issues arising on those pleadings were referred. A report of referees, upon a case in this position generally submitted, can have no greater effect than the verdict of a jury. The defendant would still have the right to insist, as an objection to a judgment, that the case made in the petition gave no right to recover. But, we think, from the terms of the agreement in this case it is rather to be regarded as a common law arbitration, and, therefore, the authority of the arbitrators and umpire depends upon the agreement of the parties, of which the entry made in the minutes of the court is the evidence.

When there is a matter of difference between parties which they agree to refer, and thereupon an award is made, the award derives its force from, and really is to be considered, the agreement of the parties. A court called upon to enforce such an award, is enforcing and carrying into effect the agreement of the parties, and for the reason that it is their agreement. If there be no agreement, there can be no award ; and the same rule must apply, if what purports to be an agreement is illegal and void. *Biddell* v. *Dowse*, 6 B. & C. 255 ; 13 E. C. L. 168.

The commissioners of Hamilton county constitute a *quasi corporation* for certain limited and defined purposes. They can only sue and be sued as to certain definite matters, and their capacity in this respect is to be ascertained by refer-

ence to the matter involved, and not from any general corporate entity. If the matter be one as to which the commissioners, as a *quasi corporation* representing the county, can do no act or make no contract, then as to such a matter there is no capacity to sue or be sued. If as to such a matter a suit be in fact brought, the power of the county commissioners can extend no farther than to interpose the objection that it can not be maintained. And this objection they have no power to waive. The mere fact that the county commissioners have been sued in reference to such a matter can give no greater power to contract than they would otherwise possess. As a general proposition it may be true that a corporation being a party to an action in court, may take any step that an individual can, under like circumstances, to bring it to final judgment. 5 Howard, S. C. 89. But these must be legal steps and such as the law recognizes and can control if they exceed the legal capacity of the party, independent of the existence of the suit. For there is another general proposition equally true and more important in its application, that you are not to do indirectly what you are prohibited from doing directly. *Quando aliquid prohibetur fieri ex directo, prohibetur et per obliquum.* When the statute in express and direct terms forbids the county commissioners from making anything a charge on the county, they have no authority to make a contract which tends to that result.

It is, therefore, of no moment to inquire whether the award in this case, is a report of referees made under the direction of the court, or is the agreement of the parties; if it be tainted with illegality, if it really accomplishes that which the law prohibits, it can not be sustained. A court of justice can not be made the handmaid of illegality, either directly by the aid of its own instrumentalities, or by sanctioning and giving effect to those agreed upon by the parties.

When it is shown that the two roads are distinct, and that, for work done on the extension of the Lower River

road, the income of the Lower River road is not chargeable, and still more when it appears that any contract charging the county is prohibited, the case of the plaintiff fails. It does so appear from the provisions of the statute of which we are bound to take notice, and by the statements in the petition. A defective case can not be aided by the verdict of a jury or the report of referees. So long as the case remains under the control of the court, the verdict or the report may be set aside as contrary to law. There is power in the court to arrest. If parties make an illegal agreement, and in any stage the aid of the court is required, it will be withheld. In either way, therefore, from the continued power of the court to correct, or from the want of power in the parties to consummate, the effort to accomplish that which the law prohibits, must fail.

There are minor objections to the award in this case, which we have not thought it necessary to notice particularly. One of these is that the award is not sufficiently certain and complete. In view of the facts stated in the petition, though such is not the prayer, the action is really one for specific relief. The plaintiff was paid in bonds. These he desires to have redeemed. He can not expect to hold the bonds and receive the money. He is not directed to deliver the bonds. Indeed, they are not identified by any description, nor are they filed with the petition. If the action could be maintained, the proper relief would be to require the payment of the bonds on delivery. The judgment should not be absolute but conditional. Yet the award is absolute for the amount claimed with interest, and the judgment ought properly to follow the award. Indeed, nothing is said in the award of the bonds, except so far as it is found that the material facts in the petition are true. It is found that $4,325, principal and interest, is due from the defendants to the plaintiff, and this in the conclusion is ordered to be paid. But whether the interest was on the bonds, or on the original demand is not stated, nor does it anywhere appear what interest the bonds bore.

When it is considered that from the facts stated in the petition and the denials in the answer the real issue between the parties was, whether a certain fund should be applied in payment and discharge of certain bonds, and not whether there was a general indebtedness, it may with some propriety be claimed that the award is not sufficiently specific. Has the plaintiff the bonds, and the same bonds, ready to deliver for cancellation, when paid? Should not this be required? There may be this ability, but it can only be made to appear elsewhere than in the award.

But we do not think it necessary to remark further upon any minor points. We are satisfied that what is sought to be attempted in this case, is an improper diversion of funds from one purpose to another. The mode in which it is proposed to be accomplished, is the rendition of a judgment against the county commissioners, representing the county, upon a consideration, for which the law says the county shall not be made liable. It is doubly illegal, and to make it successful would require stronger and more conclusive steps than any which have been taken in this case.

In our opinion, therefore, the motion of the plaintiff to enter judgment upon the award, should be overruled.

Motion overruled:

SPENCER, J., concurring, and STORER, J., dissenting.

STORER, J. I can not concur with the opinion just pronounced, as the case is presented.

The plaintiff having filed his petition and the defendants their answer, it appears that both parties agreed, in special term, " to submit all matters in difference between them in the suit, to the final determination and arbitrament of Joseph Cooper and William M. Robb, mutually chosen, one by each of the parties, the award when completed, to be entered at the succeeding term of the court, and no exception should be taken to it by either party."

After a full hearing of the parties, the arbitrators awarded in favor of the plaintiff, and found there was due to him from the defendants $4,320. They further found that the

contract, upon which the plaintiff's action was brought, had been made, and the work it required to be done, was completed; that a sufficient amount of money had been collected from the tolls of the road and paid into the county treasury, as alleged in the petition, after deducting the cost of repairs. to discharge the plaintiff's claim.

The plaintiff asks judgment upon the report; the defendants deny his legal right to claim it. The cause having been reserved from special term, we are now to determine the questions made by the parties, whether the award is obligatory upon the defendants or not.

It is alleged first, that no sufficient cause of action is set forth in the petition, and we have now the power to hold, as we might well do after verdict, that the judgment of the arbitrators shall be arrested, on the ground that as no legal claim for a recovery is set forth in the pleadings, none can be said to have been submitted by the parties. In other words, that the arbitrators were precluded from giving their construction as to the rights and liabilities of those who had constituted men of their own selection the judges of the law as well as of the facts.

I have always supposed that the consent of parties litigant, expressed upon the record, withdrew the decision of the questions in controversy from the court, before whom they were pending, and referring their determination to another tribunal, was a waiver of all exception to the *mode* in which the right of action was alleged, and superseded the necessity of stating the cause of action at all, leaving to the subsequent testimony either to establish or defeat the relative claim of the parties. Hence it is, whenever judgment is rendered upon an award, the allegations of the plaintiff and defendant, as set forth in the petition or plea, are never permitted to control the judgment of the arbitrators or to affect its validity upon legal principles. In *Forseth* v. *Shaw*, 10 Mass. 253, after an award had been filed and judgment rendered, it was sought to set it aside, on error, on the ground that no sufficient cause of action was alleged in the

declaration. Judge Sewall said: "This judgment was rendered upon an award and report of referees deriving their authority from a rule of court, entered of record, and made a part of the proceedings by virtue of the agreement and consent of the parties. Such an agreement operates as a waiver of all exceptions to the forms of process; or it may be considered as a release of errors, or as an estoppel against any assignment of errors in the proceedings *anterior* to the rule, mutually consented to by the parties, each with the other." The same doctrine is affirmed in 4 Pick. 455, *Coffin* v. *Cottle,* when the court held : " Under the rule of reference, the particular form of the counts, whether good or not at law, or whether rightly joined, is wholly immaterial."

And so in *Orlady v. McNanara,* 9 Watts, 192.

We can not then, I think, refuse to confirm the award on this ground.

*Secondly.* It is contended that no legal liability against the county commissioners existed, when the action was brought, or when the award was made, and neither can, therefore, be sustained.

This proposition directly involves the power of the arbitrators under the submission ; how far did it extend, and upon what questions were they authorized to pass ?

It must be admitted that the determinations of arbitrators are regarded with great favor by the courts; every *intendment* that can properly arise, will be made to uphold them. When parties have selected their own judges, and voluntarily invested them with *plenary* power to decide any controversy, it is but just to suppose the capacity and integrity of the tribunal, thus created, was satisfactory to the parties, that they were willing to confide to their judgment what would otherwise have devolved upon the courts to determine. The supervision, therefore, of the proceedings connected with the award, as well as the award itself, ought not, and it is believed, is not in modern times ever claimed, unless the misconduct of the arbitrators demands the intervention of the courts; error in deciding what the law is, or

how it shall be applied, does not furnish the ground of exception to the judgment of the arbitrators; they may have departed far from established principles, given a new construction to private right, or allowed indemnity where none would have been given by the act of a judicial tribunal. Still the answer is, to those who seek to impugn the award, you have been heard before your own tribunal, and unless you can challenge the conduct of your judges, as fraudulent or unauthorized by the submission, you are precluded. Thus in 4 N. H. 358, *Greenough* v. *Rolfe,* the court say, "If the referees take upon themselves the whole responsibility, and decide a question of law otherwise than the court would have done, this is no good reason for setting aside the report. So if they choose to disregard the law, and decide according to what they think to be the equity and good conscience of the case, the report is not for this cause to be rejected." In *Walker* v. *Sanborn,* 8 Greenleaf, 288, it was held, "If a party defendant having a good defense at law, agreed to submit the action to the determination of referees, in the usual form, he is considered, in the absence of all evidence to the contrary, as referring all questions, as well of law as of fact, to their judgment; and if, therefore, their decision be against him, it is no ground for the rejection of the award that it is against law;" for, say the court, "the defendant must be considered to have elected his tribunal for the very purpose of having the cause honestly and impartially decided on its merits, and according to those principles which that tribunal should consider reasonable and just."

The same doctrine is found in *Kleine* v. *Catara,* 2 Gall. 61; it is also fully affirmed in *Jones* v. *Boston Mill Cor.,* 6 Pick. 156; and in the late case of *Hodgkinson* v. *Fernie,* C. B. Rep. 3 J. Scott, 189.

In 7 Ohio, 113, *Ormsby's adm'rs* v. *Bakewell et al.,* it is said, "Persons have a right to refer their controversies to arbitration on such terms as they can agree upon. By a reference, such as is made in this case, the arbitrators are authorized by the parties, finally to settle their controversy,

and they are necessarily authorized to determine on all the incidental questions, whether of law or fact, that may arise, in the investigation of the case. Whenever a court is given jurisdiction of a cause, with it is impliedly given the right to do all things, and to decide all questions, necessary to the right and just determination of that cause. The proceedings of such judges ought to be favorably viewed by the courts, and should not be disturbed unless it is made clearly to appear that they have not regarded the principles of natural justice, in hearing the parties, or giving them an opportunity of being heard; or that they were partial, or corrupt, or were imposed on by fraud, or that they have made a plain mistake in carrying out the principles they had settled."

I conclude, then, that whether the plaintiff had a right of action or not, the question has been determined by the arbitrators, and their opinion is final.

It is said, however, the defendants were not authorized by the statute defining their duties, to impose such a liability upon the county as is found to exist by the award; and if their act could not create the obligation, the judgment of the arbitrators was equally restricted. This proposition, it seems to me, assumes that the very question already discussed, has not been legally resolved. If the ground upon which I have rested it, is not tenable, then it follows clearly, the plaintiff has not made out a case for our inteference; but if it is true, that the finding of the arbitrators forecloses any inquiry as to the law they have affirmed, then the nature of the right determined, does not affect the argument. If the award is final for one purpose, it is for all purposes; and whether the cause of action did not exist, or was really valid in law, to my apprehension, was an immaterial inquiry.

A claim is asserted against a public incorporation; it is denied by those who take charge of its interests; the litigation directly involves the power of the commissioners to bind the body they represent, as well as the right of a third party to

enforce the alleged obligation; the question is one, it may be said, that admits of no legal doubt in the mind of the judge, and as to which the law is settled beyond cavil; still, if the arbitrators, who are constituted the court of the parties in controversy, with the power to decide the law and the fact, it must follow that the exposition of the law, and their opinion of the facts, should be regarded as extending to the whole subject in dispute, not merely the acts done by the commissioners, but their power to do them.

There is a very significant sentence in the order of submission, between these parties; it is this: " After the purpose of the reference is stated, it is said, that when the judgment of the arbitrators is reported to the court, no exception shall be taken to it." This release of error must have been intended to mean something more than a formal surrender of technical exceptions to any supposed want of conformity between the award and the submission; and we can not give it any other interpretation than that which concludes the parties, for every practical purpose, connected with the subject in dispute.

If, then, the commissioners had the power to consent to arbitrate, any and every question which may arise in the course of their official duties, and that they have, I entertain no doubt. Is the present case an exception to the general rule? If it is not, then the submission was authorized, and the subsequent award must bind all concerned. Why it is not, I am at a loss to understand. On no just application of the principle, do I perceive, that any distinction between the cases can be sustained.

I do not feel any difficulty in placing the county commissioners in the same position as any other public agents. While they act for the public, they may just as properly impose a duty or a burden on that public, to be performed or bourne, as the servants of any other corporate body. As they can contract debts for their principal, and bind her to their payment, it would seem to follow that the consequence of their acts, omitted or committed, in the discharge of their

functions, should be visited upon the body they represent. I know that it has been determined by our supreme court, in a late case, that the liability of the county will be greatly restricted, but of the reason of the judgment and the extent to which it goes, I am not advised. The question must be discussed, and will be, until it is thoroughly understood, and the true relation of the county to her citizens be fully vindicated.

It is further said, it will be impossible to render such a judgment upon the award, as will give the plaintiff the benefit of the funds in the county treasury.

We may decree whatever we are satisfied is just to be done, if the validity of the award is settled. If we find there is a fund which should be charged with the payment of this award, we can so order; or we may lay the foundation by our action, for the writ of mandamus, which may well issue, if it is judicially determined that the county ought to discharge the award.

I conclude, then, that the plaintiff has a right to the decree of this court to enforce his award.