Justice Stevens,
with whom Justice Kennedy joins, dissenting.
May parties to an ongoing lawsuit agree to submit their dispute to arbitration subject to the caveat that the trial judge should refuse to enforce an award that rests on an erroneous conclusion of law? Prior to Congress’ enactment of the Federal Arbitration Act (FAA or Act) in 1925, the answer to that question would surely have been “Yes.”[1] Today, however, the Court holds that the FAA does not *593 merely authorize the vacation or enforcement of awards on specified grounds, but also forbids enforcement of perfectly reasonable judicial review provisions in arbitration agreements fairly negotiated by the parties and approved by the district court. Because this result conflicts with the primary purpose of the FAA and ignores the historical context in which the Act was passed, I respectfully dissent.
Prior to the passage of the FAA, American courts were generally hostile to arbitration. They refused, with rare exceptions, to order specific enforcement of executory agreements to arbitrate.[2] Section 2 of the FAA responded to this hostility by making written arbitration agreements “valid, irrevocable, and enforceable.” 9 U. S. C. § 2. This section, which is the centerpiece of the FAA, reflects Congress’ main goal in passing the legislation: “to abrogate the general common-law rule against specific enforcement of arbitration agreements,” Southland Corp. v. Keating, 465 U. S. 1, 18 (1984) (Stevens, J., concurring in part and dissenting in part), and to “ensurfe] that private arbitration agreements are enforced according to their terms,” Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U. S. 468, 478 (1989). Given this settled understanding of the core purpose of the FAA, the interests favoring enforceability of parties’ arbitration agreements are stronger today than before the FAA was enacted. As such, there is more — and certainly not less — reason to give effect to parties’ fairly negotiated decisions to provide for judicial review of arbitration awards for errors of law.
Petitioner filed this rather complex action in an Oregon state court. Based on the diverse citizenship of the parties, respondent removed the case to federal court. More than three years later, and after some issues had been resolved, *594 the parties sought and obtained the District Court’s approval of their agreement to arbitrate the remaining issues subject to de novo judicial review. They neither requested, nor suggested that the FAA authorized, any “expedited” disposition of their case. Because the arbitrator made a rather glaring error of law, the judge refused to affirm his award until after that error was corrected. The Ninth Circuit reversed.
This Court now agrees with the Ninth Circuit’s (most recent) interpretation of the FAA as setting forth the exclusive grounds for modification or vacation of an arbitration award under the statute. As I read the Court’s opinion, it identifies two possible reasons for reaching this result: (1) a supposed quid pro quo bargain between Congress and litigants that conditions expedited federal enforcement of arbitration awards on acceptance of a statutory limit on the scope of judicial review of such awards; and (2) an assumption that Congress intended to include the words “and no other” in the grounds specified in §§ 10 and 11 for the vacatur and modification of awards. Neither reason is persuasive.
While § 9 of the FAA imposes a 1-year limit on the time in which any party to an arbitration may apply for confirmation of an award, the statute does not require that the application be given expedited treatment. Of course, the premise of the entire statute is an assumption that the arbitration process may be more expeditious and less costly than ordinary litigation, but that is a reason for interpreting the statute liberally to favor the parties’ use of arbitration. An unnecessary refusal to enforce a perfectly reasonable category of arbitration agreements defeats the primary purpose of the statute.
That purpose also provides a sufficient response to the Court’s reliance on statutory text. It is true that a wooden application of “the old rule of ejusdem generis,” ante, at 586, might support an inference that the categories listed in §§ 10 and 11 are exclusive, but the literal text does not compel that reading — a reading that is flatly inconsistent with the *595 overriding interest in effectuating the clearly expressed intent of the contracting parties. A listing of grounds that must always be available to contracting parties simply does not speak to the question whether they may agree to additional grounds for judicial review.
Moreover, in light of the historical context and the broader purpose of the FAA, §§10 and 11 are best understood as a shield meant to protect parties from hostile courts, not a sword with which to cut down parties’ “valid, irrevocable and enforceable” agreements to arbitrate their disputes subject to judicial review for errors of law.[3] § 2.
Even if I thought the narrow issue presented in this case were as debatable as the conflict among the courts of appeals suggests, I would rely on a presumption of overriding importance to resolve the debate and rule in favor of petitioner’s position that the FAA permits the statutory grounds for vacatur and modification of an award to be supplemented by contract. A decision “not to regulate” the terms of an agreement that does not even arguably offend any public policy whatsoever “is adequately justified by a presumption in favor of freedom.” FCC v. Beach Communications, Inc., 508 U. S. 307, 320 (1993) (Stevens, J., concurring in judgment).
Accordingly, while I agree that the judgment of the Court of Appeals must be set aside, and that there may be additional avenues available for judicial enforcement of parties’ fairly negotiated review provisions, see, ante, at 590-592, I respectfully dissent from the Court’s interpretation of the *596 FAA, and would direct the Court of Appeals to affirm the judgment of the District Court enforcing the arbitrator’s final award.

 See Kleine v. Catara, 14 F. Cas. 732, 735 (CC Mass. 1814) (Story, J.) (“If the parties wish to reserve the law for the decision of the court, they may stipulate to that effect in the submission; they may restrain or enlarge its operation as they please”).

 See Red Cross Line v. Atlantic Fruit Co., 264 U. S. 109, 120-122 (1924); The Atlanten, 252 U. S. 313, 315-316 (1920). Although agreements to arbitrate were not specifically enforceable, courts did award nominal damages for the breach of such contracts.

 In the years before the passage of the FAA, arbitration awards were subject to thorough and broad judicial review. See Cohen & Dayton, The New Federal Arbitration Law, 12 Va. L. Rev. 265, 270-271 (1926); Cullinan, Contracting for an Expanded Scope of Judicial Review in Arbitration Agreements, 51 Vand. L. Rev. 395, 409 (1998). In §§ 10 and 11 of the FAA, Congress significantly limited the grounds for judicial vacatur or modification of such awards in order to protect arbitration awards from hostile and meddlesome courts.