*Judgment on the verdict.*

---

## JOHNSON vs. NOBLE.

Referees are competent judges, both of the law and the fact, where both are refer-
red to them.

Where the submission is general, containing no express reservation, restriction,
or limitation upon the authority conferred, the parties are presumed to agree
that every matter, both of law and fact, which can affect the final and ultimate
decision of the referees, is included in their authority, and is proper for their
determination.

In such case, the referees are not bound to decide according to dry principles of law, but may decide according to equity and good conscience.

If, under an unlimited submission, referees, intending to assume the whole responsibility of determining the law, without referring the same to the court, decide differently from what the court would, on a point of law, nevertheless the award will be regarded as authorized and conclusive, and will not be set aside for that cause.

But if the referees, intending to decide according to law, mistake the law, and refer the same to the court for revision by an express reference, or impliedly, by stating specially the principles upon which they have acted, the award will be set aside; not for want of authority in the referees to decide against law, but for the reason that the award is not such as the referees intended to make.

A submission of the law of a case to referees, embraces a submission of the rules of evidence—the same necessarily being a branch of the law of the case.

And an error in the application of those rules will not alone constitute a sufficient reason for setting aside an award.

Where the submission was unrestricted, and the award was general, and silent as to the principles upon which it was founded ; and it was objected that the award was against law, and that the referees at the hearing received and considered evidence not competent to be received upon a trial in a court of law, it was *held* that the award was well authorized and conclusive, and that the objections made furnished no sufficient ground for setting it aside.

Case against the defendant, for debauching one L. M. Johnson, the daughter and servant of the plaintiff, *per quod servitium amisit,* &c.

The action was commenced May 1, 1839, and made returnable at the then next September term of the court of common pleas in this county, at which term, by an agreement of the parties, it was referred under a rule of court to the decision of certain persons as referees. At the hearing before the referees, the deposition of said L. M. Johnson was read in evidence, in which she testified to the fact of promises of the defendant to marry her, made both before and after the alleged injury. She also testified that at the time of the alleged injury she resided in the family of one Waldron, as a domestic ; that during her stay at Waldron's she made and considered her mother's house her home ; was in the habit of affording assistance to her mother, the plaintiff, by giving her money from time to time, and of going to her mother's and assisting her by her personal labor a fort-

night at a time, as often as once a year, and sometimes more frequently. She further testified, on cross-examination, that she was twenty-four years old in July, 1838, and had lived at Waldron's nearly four years prior to March, 1838—the period of the injury complained of.

The referees made a report, awarding damages and costs of reference in favor of the plaintiff.

On the return of the report to the court of common pleas, the defendant moved the court to set the same aside, for the following alleged reasons, viz.:

1. Because, at the hearing of said action, the referees admitted and considered evidence of a breach of promise of said Noble to marry said L. M. Johnson.

2. Because said referees admitted and considered evidence of promises of said Noble to marry said L. M. Johnson, made after the injury complained of is alleged to have been committed.

3. Because said award was against law, and erroneous, inasmuch as the said L. M. Johnson was, at the time said injury is alleged to have been committed, of the full age of twenty-one years, and was not a servant of the plaintiff, and did not reside with her, nor was she under her care and control.

This case came to this court upon an order of the court of common pleas, transferring the same for the decision of the questions arising upon the foregoing motion.

*Emery*, (with whom was *Bartlett*) for the defendant, in support of the aforesaid motion to set aside said report of referees, cited 2 *Ld. Raym.* 1032 ; 2 *D. & E.* 166 ; 4 *Doug.* 515 ; 2 *Chitty's R.* 260 ; 5 *East* 45 ; 5 *Burr.* 1878 ; 10 *John. R.* 115 ; 1 *Wend. R.* 447 ; *Adams* vs. *Adams*, 8 *N. H. Rep.* 82 ; 6 *Pick.* 148 ; 10 *Ditto* 348 ; 8 *Greenl. R.* 119 ; 2 *Ves. Jr.* 17 ; 2 *Verm. R.* 575.

*Hackett*, for the plaintiff, in support of the report of the

referees, cited 3 *Johns. Rep.* 368 ; 9 *Ditto* 212 ; 10 *Ditto* 143; *Stark. Ev.* 1308, *and* 2 *D. & E.* 166.

Woods, J. The objections made by the defendant, and specifically stated in the case, are not sustained by the decisions of the English courts, and of the courts of this country, and cannot therefore prevail against the report.

They resolve themselves substantially into this—that the referees have not acted in conformity with their authority, inasmuch as, according to the view of the defendant, they were bound to decide the cause upon legal and competent evidence, and according to the strict rules of law ; whereas, as it is alleged, they have not so decided, but have decided the matter submitted, upon incompetent evidence and in disregard of the law ; and the evidence which was admitted of the breach of promise of marriage was incompetent to prove any fact properly in issue upon the case before the referees ; and the proofs laid before them showed, that no such relation of master and servant existed between the plaintiff and her daughter, as would in point of law give a right of action, and warrant a finding in favor of the plaintiff.

Assuming the positions relied upon to be true in point of fact ; that is, assuming that evidence not admissible upon a trial at law was laid before the referees, and that upon the facts proved their decision was not according to strict principles of law ; nevertheless, we are all of the opinion that the decision was well authorized, and that those circumstances furnish no ground for setting aside the report.

It is unquestionably among the fundamental and well established rules upon the subject of arbitrament, that the action of the referees must conform to the submission. Their whole authority, indeed, whether the submission be under a rule of court or otherwise, springs from the act of the parties in making the submission ; and, as a necessary and legitimate consequence, any exercise of power by them, in making a

decision, not in conformity with the intention of the parties as indicated in the submission, is wholly unauthorized.

And, on the other hand, it has long been a familiar practice, for parties having subjects of difference, to establish tribunals of their own choice, for the determination of their controversies, pending in court or otherwise ; and the judgments of those tribunals, made fairly within the scope of the authority conferred, have long been regarded, sanctioned and enforced in courts of law and equity, by each according to its authority and legitimate mode of proceeding, as the results of proceedings well authorized by law, and binding upon the parties.

And certain it is, that in no point of view can such agreements be regarded as against sound policy,—as being inconvenient or detrimental to those who choose to resort to them, or to others ; and there would seem to be no reason why such agreements and the awards fairly made in pursuance of them, should not be sustained. In fact, the policy of the law is most decidedly in favor of settlements by arbitrators, and their awards should be sustained whenever it can be done consistently with the rules of law. And it seems accordingly to be well settled, that it is competent for parties to submit their matters in difference, as well in relation to the law as the fact, to the decision of arbitrators or referees, and to bind themselves by their judgments thereon.

And it is a necessary result, from the power to submit generally, that they have also the power and right to limit the authority conferred, and its exercise, in such manner as may be deemed expedient. If, however, no reservation is made in the agreement of submission, the parties are presumed to agree that every consideration, both of law and fact, which can affect the final and ultimate decision of the cause, is included in the authority of the referees, and is matter proper for their determination. 2 *Story's Eq.* 677, *sec.* 1454 ; *Kleine* vs. *Catara*, 2 *Gall.* 61 ; *Walker* vs. *Sanborn*, 8 *Greenl.* 288.

Under a general submission, therefore—by which I mean

a submission containing no express reservation or limitation upon the authority conferred—both the law and fact are submitted to the judgment of the arbitrators, or referees, for their consideration and decision.   And it is very well settled, that in such case arbitrators are not restricted by the submission to decide according to strict principles of law, but their decision will be in conformity with the submission, although it be made in disregard of the law, and contrary thereto. They are not bound to decide upon "mere dry principles of law," but may decide upon principles of equity and good conscience, and may make their award " *ex aequo et bono.*"

The broad, reasonable, and well settled doctrine seems to be, that if, under an unqualified or unrestricted submission, the referees, intending to assume the whole responsibility of determining the law, and not to refer it to the court, decide differently from what the court would, on a point of law, the award will be regarded as authorized and conclusive, and will not be set aside.   But if the referees, intending to decide according to law, mistake the law, and refer the same to the court for revision, either by an express reference, or by stating specially the principles upon which they have acted, which raises a presumption of intention so to refer, the award will be set aside, not for want of authority in the arbitrators to decide against law, if they deem it just and equitable so to decide, but for the reason that in such case it is apparent that the award is not such as the referees intended to make.   These principles are fully recognized in *Kleine* vs. *Catara*, 2 *Gall. R.* 61 ; *Greenough* vs. *Rolfe*, 4 *N. H. R.* 357, *and cases there cited ; and also in* 2 *Story's Eq.* 677–8.

The power of referees to decide conclusively both the law and fact, when both are included in the submission, is also recognized, and the true principle is clearly stated in the case of *Jones* vs. *Boston Mill Corporation*, 6 *Pick.* 148.   It is there said, " We take one principle to be very clear, which is, that when it manifestly appears by the submission that the parties intended to leave the whole matter, law and fact,

to the decision of the arbitrators or referees, the award is conclusive, although they should have mistaken the law, unless the award itself refers such question to the consideration of the court."

And in *Bigelow* vs. *Newell*, 10 *Pick*. 348, the doctrine in reference to the subject under consideration is laid down thus :—" But it is an equally well settled rule, that if parties, who select their own judges, do authorize them to consider and decide all questions of law arising on the hearing of the matter; or, in more general terms, submit their respective rights, depending upon considerations of law and fact, and the referees decide accordingly, such award is conclusive as well of the law as of the fact ; and the court, upon the return of such an award, will not enquire whether the referees thus authorized have decided correctly upon principles of law or not. This rule of course is to be taken, with the obvious exception of a case where the referees have referred questions of law to the courts.".

The same general doctrine is fully recognized and maintained in *Smith* vs. *Thorndike*, 8 *Greenl*. 119 ; *Walker* vs. *Sanborn*, *Ditto* 288 ; so, also, in *Haseltine* vs. *Smith*, 3 *Vt. R*. 535 ; *Downer* vs. *Downer*, 11 *Ditto* 371 ; *Bliss* vs. *Rollins*, 6 *Ditto* 529.

A similar doctrine was holden by the Court of King's Bench in England, in the case of *Bouttilier* vs. *Thick*, 1 *D. & R*. 366. The action was upon a bill of exchange, and was referred to a barrister. The court said the arbitrator is not bound to state the grounds of his decision. When matters of law and fact are referred to an arbitrator, his award is final and conclusive. If he is silent as to his law, we cannot interfere, though he be wrong.

The same principle is recognized in *Payne* vs. *Massey*, 9 *J. B. Moore's Rep*. 666. So, also, in *Cramp* vs. *Symons*, 1 *Bing. R*. 104 ; (*S. C.*, 7 *J. B. Moore* 434,) where matter of law alone, and no matter of fact, was referred to a barrister, it was decided that the court would not set aside

an award made by him on the ground that it was contrary to law, the illegality not appearing on the face of the award.

In *Chase* vs. *Westmore*, 13 *East* 357, all matters of difference between the parties were referred to a barrister, and a motion was made to set aside the award, which was made as well upon matters of fact as of law, on the ground of a mistake in point of law by the referee. The question of law, however, did not appear upon the face of the award; the report was silent as to the grounds and principles of the decision. The motion was refused; the court remarking, in substance, that no certain rule could be laid down upon the subject; but that in that case, the merit in law and fact having been referred to a person competent to decide both, the court would not open the award, unless it could be shown to be so notoriously against justice, and his duty, that the court might infer misconduct on the part of the arbitrator; and that where the question of law arises upon the face of the award, then the court must necessarily take notice of it.

We take it that the opinions of the English courts have not in the cases cited, most of which were cases in which the matters were referred to members of the bar, gone upon the ground that the arbitrators were barristers, excepting so far as that circumstance might lead to the conclusion that the parties intended to submit the law to their decision. We take it, that the fact that it was found to have been intended to refer the law to the decision of the referees, lies at the foundation of the decisions in those cases.

In *Patten* vs. *Hunnewell*, 8 *Greenl. R.* 19, it is decided, that it is no sufficient ground for the rejection of an award, that improper testimony was received by the referees, unless it be objected to at the time of its reception. In that case the verbal statement of the plaintiff, not under oath, was received in proof of a material part of his claim, or cause of action sued for; and it was decided that its reception furnished no ground of exception to the award, the evidence not having been excepted to at the time of its reception. That

case turned on the ground that no objection was made at the time the evidence was offered, and leaves the question open whether it would have furnished sufficient ground for setting aside the award, if it had been excepted to at the time of its reception.

But in *Fuller* vs. *Wheelock*, 10 *Pick.* 136, the court in pronouncing the judgment remarked :—" By the true construction of this award, we think the question intended to be submitted to the court, was, whether White was a competent witness, according to the legal rules of evidence ; not whether he could be admitted under the extraordinary powers vested in the referees as arbitrators, without regard to his legal competency. We think there is no doubt that the referees might receive the testimony of an incompetent witness, if in their judgment the justice of the case required it."

In *Hollingsworth* vs. *Leiper*, 1 *Dallas' Rep.* 161, it was decided, that it is not a valid exception to a report of referees, that they heard the testimony of a witness interested in the cause. The court, in delivering their opinion, remark : "As to the kind of evidence which the referees may hear, there always has been and must necessarily be, in this kind of tribunal, a very great latitude. The parties are permitted to relate their own stories, and confront each other; the witnesses are heard, even without an oath, unless the contrary is stipulated or the referees require it. Books and papers are inspected and examined by them, without regard to their being such as would be strictly evidence in a court of law."

In *Learned* vs. *Bellows*, 8 *Verm. R.* 79, it is decided, that where a case is referred by agreement of the parties, it forms no ground for setting aside the report, that the referees admitted illegal or irrelevant testimony, if it had no tendency to mislead their minds, and so far as the court learn, did not mislead them. Mr. Justice Redfield, in pronouncing the judgment of the court, very pertinently remarked, " It is not to be tolerated for a moment, that in the case of every reference in the county court, which is really taking the case

from the court and putting it before a tribunal of the parties' selection, the court shall, on the return of the report, sit to adjudge their whole proceedings, and determine just how much of the testimony was relevant, and how much was not ; and if any part of the proceedings did not conform to the strictest rules of law on trials to the jury, that the cause must be recommitted. This would establish literally endless litigation."

In *Perryman* vs. *Staggall,* 9 *Bing.* 769, (3 *M. & Scott,* 93, *S. C.,*) the court refused to set aside the award of a barrister on a motion for that purpose, made on the ground that he had admitted an incompetent witness. It was in that case said by Tindal, C. J., that, " when the parties appoint a lawyer their arbitrator, they appoint him judge of the law as well as of the fact, and that it has been the constant practice to refuse any appeal on the merits of the decision." That case would seem to call upon the court, as strongly as any other, to interfere in the judgment of the referees, for the cause assigned ; for it must have been known, both to the party offering the witness and to the referee, that the witness was incompetent ; that very question having just been settled, in the then recent case of *Perryman* vs. *Staggall and Straight,* reported in 8 *Bing. R.* 369 ; and, moreover, the objection was taken at the hearing before the arbitrator.

The plain doctrine, deducible from the cases cited, is, that a submission of the law of a case to referees, is to be considered as embracing in it a submission of the rules of evidence ; and that the decision of the referees is as conclusive in relation thereto, as in relation to any other matter of law or fact submitted. And it is a reasonable doctrine. No reason occurs to us, why the rules of evidence should not be regarded as being within the purview of the submission ; but strong reason is seen, which would induce the court to construe the submission, and the power conferred by it, as embracing those rules, when it is not otherwise expressly stipulated. The question of the admissibility of a witness,

or of the competency or relevancy of testimony, is purely a question of law. And the law governing the admissibility and competency of evidence, is necessarily a portion of the law of the case ; and when the law of the case is submitted, it must necessarily be considered as being submitted as a branch of the law.

It would result from this view, that an error in the application of those rules would not alone constitute a valid reason for setting aside an award. And a different doctrine on this subject would in its operation be wholly intolerable. If every award of referees were to be overhauled and rejudged, because they may have listened to an interested witness, or because evidence for some one or more of the great variety of existing causes, deemed incompetent or inadmissible in the ordinary legal tribunals, should be laid before them, surely speedy justice would be a thing wholly unknown as the result of the action of these domestic tribunals ; and *the law's* delay would become more than ever a subject of complaint.

Ordinarily, persons chosen to discharge the duties of referees are not selected with reference to the extent of their legal learning, but with reference to their sound and discriminating judgment in regard to right and justice, and their general probity of character.

Errors in such tribunals, in the application of the strict legal rules of evidence, if such strictness were required, must necessarily be frequent and inevitable. And accuracy in that regard would be so little to be expected, that it is unreasonable to suppose that it is either expected or designed by parties who submit, to place any such limit upon their action without an express provision to that effect ; and it results, as a fair presumption, that no such restriction is intended when none is expressed.

Upon the authorities, then, we think the doctrine is clear, that under a general and unlimited submission, the fair and impartial judgment of the referees is conclusive, both upon the law and the facts of the matters submitted and decided,

in case the referees themselves have placed no limit upon the exercise of the power conferred by the submission. And in such case the rules, as well as the weight of evidence, are matters wholly within their power.

And it is wholly immaterial whether the judgment of the referees be based on legal or equitable principles. The legal and equitable considerations of the case are equally within the scope of their authority ; and in neither case, when the judgment of the referees is fairly exercised, is it the duty, or within the province of the court, to interfere and set aside the report.

In the case under consideration, the submission was general and unrestricted as to the power conferred, and the mode of the exercise of that power. The report is silent as to the principles and grounds of the decision ; and no aid of the court is asked by the report, either in the determination of the law or facts of the case ; either in express terms, or by implication. The referees have exercised the power conferred upon them, as rightfully they might, in the determination of both the law and the facts of the case, without such aid, and it falls not within the proper exercise of the authority of the court to set aside, or in any other way disturb the report made under such circumstances.

What might have been the opinion of this court as to the admissibility of the evidence of the promise of marriage, for any purpose connected with the action, upon a trial at law, upon the authority of *Gillet* vs. *Mead,* 7 *Wend. Rep.* 193 ; or what might have been the opinion of this court upon the sufficiency of the facts detailed in the deposition of Lucy M. Johnson, as evidence of the existence of the relation of master and servant at the time of the alleged trespass, upon the authority of *Miller* vs. *Thompson,* 1 *Wend. R.* 447 ; *Nickleson* vs. *Stryker,* 10 *Johns. R.* 115, and *Martin* vs. *Payne,* 9 *Johns. R.* 387 ; are questions wholly immaterial to the decision of this cause. It is sufficient that the parties clothed the referees with authority to decide those questions

according to their own views, and that they have exercised that power. A coincidence or difference of opinion in the two tribunals, upon those questions, cannot affect the result.

The opinion of the court, therefore, is, that the motion of the defendant must be denied, and that there must be

*Judgment on the report.*