PUERTO RICO LABOR RELATIONS BOARD, ETC., Petitioner, *v.* NEW YORK & PORTO RICO STEAMSHIP CO., Respondent.

No. 11. Argued February 9, 1949.—Decided March 31, 1949.

*Yamil Galib Frangie, Ramón Olivo Nieves,* and *Iram R. Cancio Vilella,* for petitioner. *Charles R. Hartzell, Rafael O. Fernández,* and *José L. Novas* for respondent. *C. H. Juliá* for Unión de Empleados de los Muelles de Puerto Rico.

MR. JUSTICE SNYDER delivered the opinion of the Court.

This is a petition of the Labor Relations Board of Puerto Rico in the name of the Unión de Empleados de Muelles de Puerto Rico against The New York & Porto Rico Steamship Company to enforce an arbitration award. The petition

originated in this Court by virtue of § 9(2) (c) of the Insular Labor Relations Act.[1]

Miguel A. Torres and Armando Farrulla are members of the union and were employed by the company as checkers. On May 9, 1947 the company wrote the union: "As you surely know by now, checkers A. Farrulla and M. A. Torres were arrested by the F.B.I. Wednesday afternoon. Until this matter is cleared up, these two employees have been suspended from work, of which we inform you for your guidance."

On July 18, 1947 Farrulla and Torres were indicted by the grand jury of the United States District Court for Puerto Rico. The indictment charged that they violated § 409 of Title 18 of the United States Code by stealing from a pier of the company two boxes of goods which were part of an interstate shipment of freight.

The defendants were tried by the court without a jury, and were acquitted on December 29, 1947. Neither the union nor the defendants requested their employment while the latter were under indictment. But the day after they were acquitted, the union wrote the company asking for reinstatement of Farrulla and Torres and for payment of "all the wages the employees involved in this case failed to receive, from the date of suspension until the date they return to work". On January 9, 1948 the company replied that "after an investigation by the company of the facts that resulted in the suspension from employment and salary of

---

[1] Section 9(2) (c) of Act No. 130, Laws of Puerto Rico, 1945, as amended by Act No. 6, Laws of Puerto Rico, 1946, reads as follows: "In order to promote collective bargaining, the Board may, in the exercise of its discretion, aid in the enforcement of arbitration awards issued by competent arbitration agencies, whether designated according to the terms of any collective bargaining contract executed between an employer and a labor organization or by virtue of any agreement signed by a labor organization and an employer. Upon the issuance of an arbitration award, the Board may give advice at the request of any party to such award or may, if requested to do so, file in the name of the party so requesting, the proper judicial proceeding in the Supreme Court of Puerto Rico to enforce such award or arbitration."

the employees in question, we have concluded that Messrs. Torres and Farrulla were negligent in the performance of their duties and consequently they cannot be employed again by this company."

The causes for which the company is entitled to discharge employees, including incompetency, are set forth in the collective bargaining agreement between the Company and the union. The agreement provides for arbitration of disputes under the agreement, including discharges which the employees consider wrongful. And the agreement specifically provides that all arbitration awards shall be final and binding.

On March 8, 1948 the company and the union signed a stipulation submitting to arbitration pursuant to the collective bargaining agreement the following issue:

"The union requests reinstatement of employees Miguel Angel Torres, Armando Farrulla [two others not involved herein], and also payment of their respective salaries for all the time they remain discharged."

The submission agreement provided for retroactive pay despite the silence of the collective bargaining agreement on that point. The stipulation followed the collective agreement in providing that the decision of the Arbitration Committee would be final and binding on the parties.

Hearings were held by the Committee, at which the parties submitted evidence. On June 21, 1948 a majority of the Committee ordered the reinstatement of Torres and Farrulla. It concluded that they had been negligent in the performance of their duties, but that under the company's own rules their negligence warranted only one week's suspension and not discharge. It therefore ordered the company to pay Torres and Farrulla their wages from the date of suspension on May 9, 1947 until the date of reinstatement, after deducting one week's pay for the suspension.

The company did not comply with the arbitration award. The Board thereupon filed this petition to enforce the award. In opposing the petition, the company makes five contentions.

I

The company argues that the National Labor Relations Board has exclusive jurisdiction in this case by virtue of § 10 (a) of the Labor Management Relations Act, 61 Stat. 136, 29 U.S.C. Supp. I, § 141 *et seq.*, colloquially known as the Taft–Hartley Act.

We reject this contention on two grounds. In the first place, assuming *arguendo* that this is a petition to correct an unfair labor practice, the National Board does not have exclusive jurisdiction in this particular case.

The company is subject to the Taft–Hartley Act. Consequently, § 10 (a) gives the National Board exclusive jurisdiction if the company commits any of the fair labor practices listed in § 8 of that Act. *Amazon Cotton Mill Co.* v. *Textile Workers Union,* 167 F. 2d 183 (C.C.A. 4, 1948); *National Labor Relations Board* v. *González Padín Co.,* 161 F. 2d 353 (C.C.A. 1, 1947). But "the enumeration by the Wagner Act and the Taft–Hartley Act of unfair labor practices over which the National Board has exclusive jurisdiction does not prevent the States from enforcing their own policies in matters not governed by the federal law . . . ". *Algoma Plywood and Veneer Company* v. *Wisconsin Employment Relations Board,* 336 U. S. 301, 303–315.

The instant case is a proceeding to enforce an arbitration award. Violation of a collective bargaining agreement, including an agreement to accept an arbitration award, is an unfair labor practice under § 8 (1) (*f*) of the Insular Act. But that is not true under the Federal Act. Neither the National Labor Relations Act, 49 Stat. 449, 29 U.S.C. §§ 151 *et seq.*, familiarly known as the Wagner Act, nor the Taft–Hartley Act, makes it an unfair labor practice for an employer to fail to comply with an arbitration award. 59 Harv.L.Rev. 976, 977. Both those Acts are concerned principally with creating conditions which will enable the parties to reach an agreement. They do not deal with the enforcement of agreements as such. For the most part,

they leave the law on this matter where it stood prior to passage of those Acts. Magruder, Development of Collective Bargaining, 50 Harv.L.Rev. 1071, 1112.[2] Since the Taft-Hartley Act does not make refusal to comply with an arbitration award an unfair labor practice, there is no conflict between it and § 8(1) (f) and consequently the latter may be enforced even against an employer subject to the Federal Act despite § 10(a) of the latter Act. *Algoma Plywood and Veneer Company* v. *Wisconsin Employment Relations Board,, supra; International Union, U.A.W., A.F. of L., Local 232; et al. v. Wisconsin Employment Relations Board, et al.,* 336 U.S. 245; *Allen-Bradley Local* v. *Wisconsin Employment Relations Board,* 315 U. S. 740. See also, 61 Harv.L.Rev. 840; 60 Harv.L.Rev. 262; *Chabrán* v. *Bull Insular Line,* 69 P.R.R. 250, 270, and cases cited. For the reasons stated in the *Algoma* case, *Bethlehem Steel Co. et al.* v. *New York S.L.R.B.,* 330 U. S. 767, and *La Crosse Telepohne Corp.* v. *Wisconsin E.R.B.,* 336 U.S. 18, 93 L.ed. 265, do not apply here..

 There is a second ground for rejecting the contention that we lack jurisdiction in this case. Even if Congress had barred state Boards from correcting unfair labor practices which are not included in the Federal Act, we would have jurisdiction in this particular case. That is because, contrary to the assumption we made *arguendo* in discussing the first ground, this is not a proceeding under the insular Act to correct an unfair labor practice. Rather it is simply a private suit in a local court to compel performance

---

[2] Cf. *National Labor Relations Board* v. *Newark Morning L. Co.,* 120 F. 2d 262 (C.C.A. 3, 1941), cert. denied, 314 U.S. 693; *Timken Roller Bearing Co.* v. *National Labor Relations Board,* 161 F. 2d 949, 954 (C.C.A. 6, 1947). Under the *Newark* case, discharge for union activity *is* an unfair labor practice under the Wagner or Taft-Hartley Act even if the discharge takes place after the parties have entered into a collective bargaining agreement. But that does not affect this case. The discharge here was allegedly for cause. Although the union asserts there was no cause, it does not contend that the discharge was for union activity. Consequently, even under the *Newark* case this discharge could not be the basis for an unfair labor practice case under the Taft-Hartley Act. ·

of a contract. And Congress did not intend to oust the local courts of jurisdiction in such cases.

Our Act and the nature of this case make it clear that this is a suit to enforce private rights and not a proceeding to correct an unfair labor practice. Section 8(1) of our Act enumerates the unfair labor practices an employer may commit. Section 8(1)(f) makes it an unfair labor practice for an employer to fail to comply with an agreement to accept an arbitration award. But the Board did not proceed against the company for violation of § 8(1)(f). If it had, it would have been required to issue a complaint, conduct a hearing and issue a Decision and Order, which would be final and binding on the parties unless reversed on review by this Court. The Board would have been acting in a quasi-judicial capacity. And it would have decided whether an unfair labor practice had been committed and what relief should be granted. See §§ 9(1)(a)(b); 9(2)(a)(b). Moreover, failure to comply with the Order of the Board would have brought into play the additional sanctions provided by § 11. See 59 Harv.L.Rev. 976, 981–2.

However, instead of charging a violation of § 8(1)(f) and proceeding to a hearing and decision by the Board under § 9(1)(a)(b) and review by this Court under § 9(2)(a) (b), the Board filed an original petition in this Court under § 9(2)(c). Section 9(2)(c) is not designed to prevent unfair labor practices as such. It is true that § 9 is entitled "Prevention of Unfair Labor Practices", and that the other provisions of § 9 come properly within that title. But the fact remains that the terms of § 9(2)(c) show clearly that it does not deal with prevention of unfair labor practices. As we have seen, whenever an unfair labor practice is charged, the Board enters a decision in which it finds whether or not the employer has committed the unfair labor practice and if necessary orders it to desist and to take such affirmative action as shall effectuate the purpose of the Act. But under § 9(2)(c) the Board does not charge the employer

with committing an unfair labor practice and makes no decision disposing of the controversy. Instead, it acts as agent or representative of the prevailing party to file a suit in this Court to compel performance of a contract in which the losing party agreed but has failed to accept an arbitration award.

■ The Company could also have been charged, based on the same facts, with engaging in an unfair labor practice in violation of § 8(1)(f). But that would have been a charge involving *public* policy. We recently pointed out that in such cases the Board acts to vindicate public policy, and not merely to enforce private rights or duties as in the instant case. *Quiñones* v. *Labor Relations Board, ante,* p. 551. Failure to comply with a Decision and Order of the Board in such a case would carry with it the additional sanctions established by § 11. No such charge was made or decided by the Board here. And the company need not be concerned by the additional sanctions of § 11. Here Torres and Farrulla are seeking only to enforce their *private* rights under the collective bargaining and submission agreements and the arbitration award made pursuant thereto. The fact that under § 9(2)(c) the Board appears as their representative neither adds to nor substracts from their rights. Nor does it change the nature of their remedy. In this respect the situation is analogous to the cases where by statute attorneys of the insular Department of Labor represent employees in suits for unpaid wages.

We are aware that the Board acts under § 9(2)(c) "to promote collective bargaining . . . ". But that does not change the fact that a proceeding under § 9(2)(c) is designed to enforce by judicial action private rights under a contract and not to determine whether the company has violated public policy by engaging in an unfair labor practice prohibited by § 8(1)(f).

■ There is nothing in our local law which bars this action as a private suit. An employee or a union in his

behalf may sue an employer in the courts for enforcement of the provisions of a collective bargaining agreement.[3] This case comes within that doctrine as it is a suit by a union, represented by the Board, on behalf of two of its members to enforce an arbitration award made under a collective bargaining agreement. See *Ríos* v. *Puerto Rico Cement Corp.*, 66 P.R.R. 446.

■ There is likewise nothing in the Federal Act which prohibits this private suit. Even if, contrary to the present case, the facts showed an unfair labor practice under the Federal Act, the exclusive jurisdiction of the Board to protect the *public* right in such a case does not necessarily bar a suit in the local courts by an employee to protect his *private* rights. *National Labor Relations Board* v. *Newark Morning L. Co., supra; National Labor Rel. Board* v. *Walt Disney Productions*, 146 F. 2d 44 (C.C.A. 9, 1944) ; *National Labor Relations Board* v. *American White Cross Lab.*, 160 F. 2d 75 (C.C.A. 2, 1947) ; Gregory, supra, p. 467. Cf. *Quiñones* v. *Labor Relations Board, supra.*[4]

■ The rule stated in the preceding paragraph applies with even more force where the plaintiff as here is endeavor-

---

[3] Rice, Collective Labor Agreements, 44 Harv.L.Rev. 572; Simpson, Fifty Years of Equity, 50 Harv.L.Rev. 171, 200–201; Notes, 51 Harv.L. Rev. 520; Witmer, Collective Labor Agreements in the Courts, 48 Yale L.J. 195; Freidin and Ulman, Arbitration and the War Labor Board, 58 Harv.L.Rev. 309, 337–41; Freidin, The Public Interest in Labor Disputes, 12 Law and Contemporary Problems 367, 379–80; Gregory, The Enforcement of Collective Labor Agreements by Arbitration, 13 U. of Chi.L.Rev. 445; Annotation, 156 A.L.R. 652; *Freydberg Bros., Inc.,* v. *Corey et al.,* 31 N.Y.S. 2d 10 (1941), affirmed in 32 N.Y.S. 2d 129; authorities collected in dissenting opinion of Judge Clark, *National Labor Relations Bd.* v. *Newark Morning L. Co., supra,* p. 269 *et seq.* (C.C.A. 3, 1941) ; see *J. I. Case Co.* v. *Labor Board,* 321 U.S. 332, 336.

[4] In the *Newark* case the court held on rehearing that the discharge of an employee for union activity after the parties had entered into a collective bargaining agreement was an unfair labor practice with which the National Labor Relations Board was empowered to deal. It is not within our province to determine if the majority opinion is sounder than the dissenting opinion. See 51 Yale L.J. 501; 90 U. of Pa.L.Rev. 107; Annotation, 137 A.L.R. 867; Cox, Some Aspects of the Labor Management Relations Act, 1947, 61 Harv.L.Rev. 274, 278, footnote 9. For us

ing in a private suit to enforce an arbitration award made under a collective bargaining agreement. It is true the Taft-Hartley Act does not make violation of a collective bargaining agreement, including refusal to abide by an arbitrator's award made thereunder, an unfair labor practice. But both the Wagner and the Taft–Hartley Acts are designed to promote collective bargaining. And arbitration is a part of the collective bargaining process. *Timken Roller Bearing Co. v. National Labor Rel. Bd., supra,* p. 954. Moreover, the Taft–Hartley Act stresses time and again the use of voluntary agreement and voluntary processes for the settlement of labor-management disputes. This includes a collective bargaining agreement which makes voluntary arbitration the final step in settling grievances and disputes under the agreement. Braden, Problems in Labor Arbitration, 13 Mo.L.Rev. 143, 166; see *International Union v. Colonial Hardwood Floor Co.,* 168 F. 2d 33, 35 (C.C.A. 4, 1948).[5] It therefore can scarcely be contended that enforcement of an arbitration award somehow runs afoul of the Taft–Hartley Act, particularly where as here the National Board does not have jurisdiction of the refusal to abide by the award as an unfair

the important thing is that even the majority opinion makes it clear at p. 268 that the exclusive jurisdiction of the National Board under the Wagner Act to protect the public right in such a case does not necessarily bar a suit in the courts by the employee to protect his private rights.

In his dissent in the *Newark* case, Judge Clark asserts that the Board has no jurisdiction. But he also, with a wealth of citations at pp. 270–72, agrees with our view that an aggrieved employee has a right to reinstatement through private suit in the ordinary courts for enforcement of the collective bargaining agreement as applied to him. And see *National Labor Relations Bd. v. Stackpole Carbon Co.,* 128 F. 2d 188, 190–1 (C.C.A. 3, 1942); Annotation, 42 A.L.R. 727; *Rhodes v. New Orleans Great Northern R. Co.,* 91 So. 281 (Miss., 1922); *Baird Bros. v. Minneapolis & St.L.R.Co.,* 165 N.W. 412 (Ia., 1917).

[5] Section 201(a) of Title II of the Taft-Hartley Act provides that it is the policy of the United States that the welfare of the nation can be best secured through collective bargaining. Section 201(b) goes on to point out that settlement by collective bargaining may be advanced by making available full government facilities for conciliation, mediation, and voluntary arbitration. This is the only mention of arbitration by name in the Act. But in addition to stressing voluntary adjustment of dis-

labor practice. Annotation, 149 A.L.R. 276; · Cox, *supra*, pp. 303–5; Updegraff and McCoy, Arbitration of Labor Disputes (1946), p. 42. Cf. *Benedict* v. *Limited Editions Club, Inc.*, 39 N.Y.S. 2d 852 (App.Div. 1943), commented on in 1 Teller, Labor Disputes and Collective Bargaining, Cum.Supp. § 181 p. 127.

In view of the foregoing, we are unable to agree with the contention of the company that we have no jurisdiction in this case.[6]

## II

The company argues that the submission to arbitrate was defective.

Enforcement of an arbitrator's award by the courts may be opposed because of a defective or insufficient submission. *Ríos* v. *Puerto Rico Cement Corp., supra*, p. 453. The alleged defect in this case was that the submission agreement was not embodied in a public document. The company relies on *Mas* v. *Llona*, 31 P.R.R. 28. There we held that (p. 29) "no other law being applicable", the Spanish Law of Civil Procedúre applied. The latter provides that

---

putes throughout the Act, § 10(k) encourages arbitration of jurisdictional disputes. And § 302, paragraph c(4)(b), provides for arbitration regarding union welfare funds. See Braden, *supra*, pp. 165–67. According to Gotshal, Arbitration and Its Possibilities and Limitations under the Taft–Hartley Law, 2 Arb.J. 318 (1947), as quoted in Braden, *supra*, p. 167, "arbitration will assume a more important role under the Taft–Hartley Law, and . . . it will serve to settle as a final step in well organized grievance procedures an ever increasing number of industrial controversies."

[6] We note in passing that the company has taken action which is consistent with our view that the courts have jurisdiction in this case. On August 18, 1948 it filed civil suit, No. 5210 against the members of the Arbitration Committee in the United States District Court for Puerto Rico praying for a declaratory judgment that the award is null and void. But if the National Board has exclusive jurisdiction over the subject-matter, neither a Federal district court nor this Court may pass on it. Cf. *Amazon Cotton Mill Co.* v. *Textile Workers Union, supra*, cited by the company. Filing of a suit by the · company in the Federal district court appears to be in conflict with its view that only the National Board may pass on these matters.

an arbitration agreement shall be made by public deed. Cf. *Noble* v. *Rodríguez, et al., ante*, p. 447.

The *Mas* case is not controlling because we do have another applicable law to arbitration of labor disputes. In § 9 (2) (c) the Legislature provided for enforcement in this Court of an arbitration award made by arbitrators designated according to a collective bargaining agreement or by virtue of an agreement between a union and an employer. Sections 8 (1) (f) and 8 (2) (a) contain similar provisions. These Sections require only an agreement to arbitrate, not a public deed. And they were enacted in the light of the usual practice, of which we take judicial notice, of executing collective bargaining agreements by private document.

We hold that the agreement to arbitrate was not defective merely because it was not embodied in a public deed.

### III

We need not stop to examine the point made by the company that the Board abused the discretion vested in it by § 9 (2) (c) in bringing this proceeding. This is a matter which the Legislature left to the judgment of the Board. We are unable to see on what basis we could hold that we are entitled to substitute our views on such an administrative decision for those of the Board.

The company also includes under this point a contention that the petition does not state sufficient facts. We deem this point too trivial to warrant any discussion.

### IV

The company contends that the award is null by virtue of errors of law made by the Arbitration Committee. The first error of law alleged is that the undisputed facts show that the company was entitled as a matter of law to discharge Farrulla and Torres.

The record does not contain the testimony before the Committee. The company relies on the statement of facts in

the decision of the Committee which shows that the company's ship arrived in Puerto Rico with merchandise consigned among others to the U.S. Rubber Export Company, R. Fabián & Co., and Laudelino Alonso & Co. On May 1, 1947 a truckman of U.S. Rubber came to the pier with a bill of lading for delivery of 115 packages of merchandise, including 25 cartons of automobile tubes and 28 boxes of canvas footwear. Torres delivered 115 packages to the truckman, including 23 cartons of tubes and 28 boxes of canvas footwear. In making the cart check required for delivery of merchandise and release from the pier, Torres listed 115 packages. But he listed 25 instead of 23 cartons of tubes and 26 instead of 28 boxes of canvas footwear.

On May 2, 1947 a truck driver appeared at the pier with the bill of lading. Since 2 boxes of canvas footwear were pending delivery, Farrulla delivered 2 boxes for which he issued a cart check in the name of U. S. Rubber. These two boxes were not received by the latter. In fact, as already noted, U. S. Rubber had already received on May 1 the complete shipment of 28 boxes of canvas footwear.

U. S. Rubber thereafter made a claim for the 2 cartons of rubber tubes it had never received. They were found 8 or 10 days later on the pier, and delivered by an FBI agent. Two boxes of rayon goods belonging to Fabián & Co. and Alonso & Co. could not be located. They submitted their claims therefor to the company, which were paid by the insurance company.

Apparently, the theory of the government in the criminal case in the Federal Court was that Torres, Farrulla and a truck driver joined in a plan to steal 2 boxes of rayon goods. The scheme, according to the government, was that in the cart check Torres would overstate by two the cartons of tubes delivered to U. S. Rubber and understate by two the boxes of canvas footwear delivered to that company. The next day a truck driver would present the bill of lading showing that U. S. Rubber was still entitled to 2 boxes of can-

vas footwear. Actually the full shipment of canvas footwear had already been delivered the previous day to U. S. Rubber. Instead of canvas footwear, Farrulla would give the truck driver 2 boxes of rayon goods. The government claimed the scheme worked.

The testimony offered did not convince the court beyond a reasonable doubt, and the defendants were acquitted. However, the company was of course still entitled to demonstrate before the Arbitration Committee if it could—without reference to the test of proof beyond a reasonable doubt—that the negligence or incompetency of Farrulla and Torres had resulted in the loss of merchandise and therefore justified their discharge. The Committee concluded that the testimony offered before it showed that Farrulla and Torres had been negligent. But it decided that their negligence warranted only suspension of a week and not discharge.

We assume that the negligence of Farrulla and Torres was sufficient to justify their discharge under *Blanes* v. *District Court et al.*, *ante*, p. 106. But the company did not retain its right to discharge its employees under the rule of the *Blanes* case. Instead for the sake of industrial peace it voluntarily restricted its right to discharge employees to the causes listed in the collective bargaining agreement. What is more important, in the collective bargaining and submission agreements the company voluntarily relinquished its right to have the courts determine the merits of a particular discharge, both as to facts and law. Phillips, The Function of Arbitration in the Settlement of Industrial Disputes, 33 Col.L.Rev. 1366, 1381–82. It agreed that such questions should be submitted to an Arbitration Committee whose awards would be obligatory on the parties and would be final and binding. The company is in effect now asking us to set aside the contracts which it freely made.

An arbitrator's award is neither a contract nor a judgment, but it partakes of the nature of both. Consequently, the grounds on which an award based on a voluntary sub-

mission may be impeached are limited to (1) fraud, (2) misconduct, (3) lack of due process in the conduct of the hearing, (4) violation of public policy, (5) lack of jurisdiction, and (6) want of entirety. Updegraff and McCoy, *supra,* pp. 124–27. This means that an award "cannot be set aside for mere errors of judgment either as to the law or as to the facts." *Wilkins* v. *Allen,* 62 N.E. 575, 576 (N.Y., 1902).[7]

 As the Board pointed out at the oral argument, the Board or this Court might have arrived at a different conclusion if the issues had been submitted to it or to us. But parties who enter into an agreement of this nature must understand that they have substituted the arbitrator for the courts for the determination of all questions of fact and substantive law. The company bargained away its right to litigate such questions in the courts. We are powerless to come to its rescue.

We emphasize that we are not holding that the company was not justified in discharging Farrulla and Torres. Their conduct was negligent and suspicious. It resulted in the theft of merchandise. Perhaps those facts were part of a

---

[7] To the same effect, *Motor Haulage Co.* v. *International Brotherhood,* etc., 71 N.Y.S. (2) 352 (1947); *Johnson* v. *Noble,* 13 N.H. 286, 38 Am.Dec. 485 (1842); *Robert Bros.* v. *Consumers' Can Co.,* 62 A. 585 (Md., 1905); *Deshons* v. *Scott's Adm'r,* 260 S.W. 355 (Ky., 1924); *Marchant* v. *Mead-Morrison Mfg. Co.,* 169 N.E. 386, 392 (N.Y., 1929); *Koepke* v. *E. Liethen Grain Co.,* 236 N.W. 544 (Wis., 1931); *Housing Authority* v. *Henry Ericsson Co.,* 2 So. (2) 195 (La., 1941); *In re Reynolds's Estate,* 20 S.E. (2) 348 (N.C., 1942); *J. F. Fitzgerald Const. Co.* v. *Southbridge Water S. Co.,* 23 N.E. (2) 165, 167 (Mass., 1939); Annotation, 112 A.L.R. 873; Braden, *supra,* p. 150; Fraenkel, Arbitration of Labor Disputes, XVII N.Y.L.Q. 549, 558; Freidin and Ulman, *supra,* p. 328, 354–55; Phillips, Rules of Law or Laissez-Faire in Commercial Arbitration, 47 Harv.L.Rev. 590, 598–99, 602–3; Isaacs, Two Views of Commercial Arbitration, 40 Harv. L.Rev. 929; Comment, Arbitration of Labor Interpretation Disputes, 43 Ill.L.Rev. 678, 689–90.

For the rules governing arbitration of industrial disputes generally, see 1 Teller, *supra,* §§ 178–85. For the history and development of the law of arbitration, see *Rueda* v. *Union Pac.R.Co.,* 175 P. (2) 778 (Ore., 1946); *Park Const. Co.* v. *Independent School Dist. No. 32,* 296 N.W. 475 (Minn., 1941), dissenting opinion, p. 478 *et seq.*

general situation which may have justified drastic action by the company. Cf. Findings and Resolutions of the Grand Jury of the District Court of the United States for Puerto Rico, In re: Investigation of Thefts and Pilferages from Interstate Shipments, filed November 1, 1944. But the company renounced its freedom of action. It agreed to abide by the judgment of an Arbitration Committee on this point. There is no way under the law in which we can relieve it of its bargain.[8]

The situation would be different if the collective bargaining agreement or the submission to arbitration had provided that the Arbitration Committee must decide according to law. "Where the parties so provide, the arbitrators must follow rules of law, and make their award in accordance with the prevailing legal doctrines. If the arbitration agreement is silent with regard thereto, at common law and under most of the arbitration statutes, the arbitrators may declare law as they please, and no award will be vitiated because of their legal errors. . . . ". 6 Williston on Contracts, Rev. ed., § 1929, p. 5396; *Freydberg Bros., Inc.* v. *Corey et al.*, 31 N.Y.S.(2) 10 (1941), affirmed in 32 N.Y.S.(2) 129; *Loving & Evans* v. *Blick*, 177 P. (2) 981 (Calif., 1947); *Wilkins* v.

---

[8] In *Ríos* v. *Puerto Rico Cement Corp., supra,* we said at p. 453: "An arbitration award stands in a position very similar to that of a judicial judgment or decree. Ordinarily it may be impeached or set aside if there is any defect or insufficiency in the submission or award rendering it invalid, or when there has been a substantial and prejudicial departure from the rules governing proceedings by and before arbitrators. The courts are extremely reluctant to set aside an arbitration award, and they should not permit that the awards be impeached unless they are clearly subject to one of the above objections or there is alleged fraud, misconduct, or the commission of gross or prejudicial error equivalent to a violation of the right to a due process of law."

In view of the reliance of the company on this paragraph, we think it appropriate to clarify it. We did not mean to hold in the *Ríos* case that an award could be impeached for errors of substantive law. On the contrary, we meant to hold that if the arbitrator acts with jurisdiction, only errors of fraud, misconduct or lack of due process may be invoked in the courts against his award. To these grounds, as we point out herein, should be added, violation of public policy and want of entirety in the award.

*Allen, supra; Shirley Silk Co.* v. *American Silk Mills,* 13 N.Y.S.(2) 309 (1939) ; Phillips, *supra,* 47 Harv.L.Rev., at 603–4. See Note, 61 Harv.L.Rev. 1022. A leading authority on arbitration is of the view that review by the courts on substantial questions of law would make arbitration more effective. Phillips, *supra,* 47 Harv.L.Rev. at p. 609 *et seq.* But in the absence of a provision in the arbitration agreement or of a statutory requirement to that effect, the arbitrator is free to ignore substantive rules of law.

Here neither the collective bargaining nor the submission agreement restricted the powers of the Arbitration Committee. Rather, they both gave it unfettered powers. And they specifically provided that its award shall be final and binding. We therefore have no authority to refuse to enforce the award because of the Committee's alleged errors of substantive law.[9]

■ The company next contends that the Committee exceeded its jurisdiction. Precisely because an arbitrator's award is final and binding, the arbitrator does not, unless the parties agree thereto, determine his own jurisdiction. It is for the courts and not the arbitrator to construe the arbitration agreement to determine what questions the parties agreed to submit to arbitration. And contracts providing for arbitration will be carefully construed in order not to force a party to submit to arbitration a question which he did not intend to be submitted. *B. Fernández & Hnos., S. en C.* v. *Rickert Rice Mills, Inc.,* 119 F. (2) 809, 814–15 (C.C.A. 1, 1941) ; *Texoma Natural Gas Co.* v. *Oil Workers*

---

[9] Assuming that §§ 1719, 1720 and 1715 of the Civil Code apply herein, we would reach the same result. Those Sections authorize submission of disputes to a third party whose decision shall have (§ 1715) "the same authority as *res adjudicata* . . . ".

The provisions of §§ 204–11 of the Code of Civil Procedure, 1933 ed., relate to decisions of cases in the courts by referees. They have no relation to arbitration outside the courts. *Mas* v. *Llona, supra,* p. 32. We make this comment because "referee" and "reference" have been incorrectly translated in the Spanish version of those Sections as *árbitro* and *arbitraje.*

*I.U., etc.*, 58 F.Supp. 132, 146–47 (Tex., 1943), affirmed in 146 F. (2) 62 (C.C.A. 5, 1944); *Ass'n of Master Painters, Etc. v. Brotherhood, etc.*, 64 N.Y.S.(2) 405, affirmed in 66 N.Y.S.(2) 626; Updegraff and McCoy, *supra*, pp. 63, 117; 6 Williston, *supra*, § 1929, pp. 5393–5.

▆▆▆ The first point we examine under this heading is whether the Committee exceeded its jurisdiction when it suspended Torres and Farrulla for a week. The argument of the company is that the only issue submitted to the Committee was whether they were wrongfully discharged; that the necessary implication of its conclusion that they were negligent was that the discharge was justified; and that the submission agreement did not authorize the Committee to change the penalty from discharge to one week's suspension.

We do not find that argument convincing. In the absence of an express provision to the contrary in the collective bargaining or submission agreement, the Committee had the power to find that even if the facts on which the company predicated the discharge are true, discharge was too drastic a penalty, and to modify the penalty. *In re E. I. du Pont de Nemours and Co., Inc., and Textile Workers Union*, 9 Labor Arbitration Reports 345 (1947); *In re Pyrene Mfg. Co. and United Electrical Radio and Machine Workers*, 9 Labor Arbitration Reports 787 (1948). But see, *In re Stockham Pipe Fitting Co. and United Steel Workers*, 1 Labor Arbitration Reports 160 (1946) and *Simon v. Stag*, 18 N.Y.S. (2) 197 (1940), *contra*.[10]

We must bear in mind that the question is not whether the Committee rendered a decision with which we agree. On the contrary, we are seeking to determine only if it had jurisdiction to render a decision of reinstatement with suspension of one week. It could have reinstated Torres and Farrulla without any suspension. We fail to see why it could not reinstate them with a week's suspension.

---

[10] *Simon v. Stag* is criticized adversely in Fraenkel, *supra*, pp. 561–62.

We agree with the views of Comment, Discharge and Discipline Cases in Labor Arbitration, 43 Ill.L.Rev. 847 (Jan.–Feb. 1949) on this question. There the writer said at page 856 that the "question of whether discipline was for 'just cause' logically includes the question of whether 'just cause' existed for the particular disciplinary action taken. The contract should be the determining factor and if either the contract or the submission agreement expressly prohibits the arbitrator from modifying the penalty he is bound by this limitation on his authority. In the absence of such express limitation, however, most arbitrators feel that they have the right to change or modify a penalty if it is found to be too severe, under all the circumstances of the situation."

The company next contends that the Committee lacked jurisdiction to award pay retroactive to May 9, 1947. It argues that the terms of the submission agreement vested jurisdiction in the Committee to award back pay from the date of definite discharge on January 9, 1948, but not to May 9, 1947, the date they were suspended because of their arrest on the Federal criminal charge.

The letter of December 30, 1947 from the union to the company requested back pay to May 9, 1947. But that unilateral communication is not controlling. The collective bargaining agreement provides for arbitration of alleged wrongful discharges, but it makes no provision for reinstatement with back pay. The only reference to retroactive pay is in the submission agreement, which authorized award of pay "for all the time they remain discharged." In interpreting this clause, we find it significant that when the company wrote the union on May 9, 1947 that Torres and Farrulla were suspended until the matter was cleared up, neither they nor the union protested or invoked the arbitration clause of the collective bargaining agreement, which required immediate notice of any dispute or claim. They acquiesced in the position of the company which was obviously fair to all con-

cerned: checkers could not work while under indictment for stealing freight they were supposed to deliver to consignees.

It was only after Torres and Farrulla were acquitted that the union demanded their reinstatement. The matter was then on a different footing. No Federal charge stood in the way of their employment. Despite their acquittal, the company for the first time formally discharged them. Thereupon the union, also for the first time, invoked the arbitration clause of the collective bargaining agreement.

We agree with the company that the controversy first arose on January 9, 1948; that Torres and Farrulla were then discharged for the first time; that the union thereupon immediately invoked the arbitration clause of the collective bargaining agreement; and that in view of these circumstances, the parties intended by the language of the submission agreement to authorize an award of back pay only to January 9, 1948.

As we have seen, because the parties are bound by an arbitrator's award and the courts may not review it on the merits, a submission agreement is interpreted carefully to prevent arbitration of issues not submitted to arbitration. Since the submission agreement does not clearly give the Committee authority to award back pay prior to January 9, 1948, the award may not be enforced insofar as it provides for back pay prior to that date.

However, the fact that an award is partly void, does not necessarily vitiate the entire award. The valid portion will be enforced, provided the award is severable. 6 Williston, *supra*, § 1929, p. 5395; *Geiger* v. *Caldwell*, 114 S.E. 497 (N.C., 1922) ; *J. F. Fitzgerald Const. Co.* v. *Southbridge Water S. Co.*, 23 N.E. (2) 165 (Mass., 1939) ; *Clark Millinery Co.* v. *National Union Fire Ins. Co.*, 75 S.E. 944 (N.S., 1912). The reinstatement provision of this award is severable from the provision for retroactive pay. Updegraff and McCoy, *supra*, pp. 117–18. The valid portion with reference to reinstatement will therefore be enforced.

 On the other hand, the award of back pay to January 9, 1948 is not a valid portion of the award which is severable from the award of back pay to May 9, 1947. For us to hold that Farrulla and Torres shall receive pay retroactive to January 9, 1948, would be to alter or modify the award as to back pay, and not simply to sever a valid portion from a void portion of an award. Updegraff and McCoy, *supra*, pp. 117–18. Since the award of back pay is not composed of two severable parts, the entire provision with reference to back pay is void.

 Even if we had concluded that the award of back pay to January 9, 1948 could be severed and enforced, the award as to retroactive pay suffers from another defect. An award must, standing alone without modification or clarification by the courts, be entire, that is, make final disposition of all the issues submitted. 6 Williston, *supra*, § 1929, p. 5397–8; Updegraff and McCoy, *supra*, pp. 117, 120, 122, 126; *Maw* v. *Kitzman*, 214 N.W. 273 (N.D., 1927); *American Trading Co.* v. *Steele*, 274 Fed. 774, 781–82 (C.C.A. 9, 1921); *McInnish* v. *Lanier*, 109 So. 377 (Ala., 1926). This is in accordance with the theory that an award ends the controversy between the parties without the intervention of the courts, except to enforce the award.

 The award in this case does not meet this test insofar as the provision for retroactive pay is concerned. The Board itself seems to lean in this direction. It has filed a "motion for interpretation of the decision of the arbitrator". The award granted Farrulla and Torres "the wages they failed to receive" from May 16, 1947. The Board now asks us to interpret that language as calling for payment of "not only the salary that the discharged employees were earning, but also the successive increases which by contract or collective agreement the parties fixed for employees of the same classification as the employees involved in this proceeding". The Board requests us to rule on this question "in order to avoid multiplicity of suits . . . ". It cites cases in which

the National Board, after finding employers guilty of unfair labor practices in discharging employees, specifically and clearly provided in its order for reinstatement with back pay calculated in this manner.

We have refused to let the company blow hot and cold. Having voluntarily agreed to arbitrate, it may not relitigate before us the issues decided by the arbitrator. The same rule applies to the union. It seeks to benefit by the rule that the award is final and binding. Yet in the next breath it asks us to clarify the award as to back pay. If the issues decided by the arbitration cannot be relitigated by the company, they cannot be relitigated by the union. We must leave the award as we find it. And since it is not clear in disposing finally of one of the issues submitted to the Committee, it is void as to that point.

This seems at first blush like a harsh and unduly technical rule. But it must be remembered that one of the purposes of arbitration is to keep a controversy out of the courts. On the merits, the courts enforce but do not interpret awards.[11]

---

[11] An illustration of the rigid requirement that an arbitrator's award must finally settle the entire controversy is furnished by the rule that when the arbitrator has rendered his award, he is *functus officio* and has no power or authority to alter it, in the absence of a statute or agreement to the contrary. Annotation, 104 A.L.R. 710; 6 Williston, *supra*, § 1927 A, p. 5390-1; Updegraff and McCoy, *supra*, pp. 120, 122, 124. In the instant case the chairman of the Arbitration Committee quite properly refused to submit to the Committee a motion for reconsideration of the company, based on the *Blanes* case which was decided subsequent to the award, because as the cases hold an arbitrator has exhausted his function when he makes an award.

There is an equally rigid requirement that an award which is not made within the time provided in the collective bargaining agreement or in the submission agreement is void and may not be enforced. Annotation, 154 A.L.R. 1392; *Brotherhood of R. & S. Cl., etc.* v. *Norfolk So. Ry. Co.*, 143 F. (2) 1015 (C.C.A. 4, 1944); 6 Williston, *supra*, § 1929, p. 5393; Updegraff and McCoy, *supra*, pp. 119-22. The collective bargaining agreement herein provides: "The Committee will meet and will render a verdict within the term of ten (10) days from the date on which the incident, dispute, controversy or claim originated." There was no verdict

 The Committee was authorized to settle the issue of rate of back pay under the submission agreement. It could have upheld the discharge; it could have suspended the employees for a period or could have reinstated them without back pay; it could have reinstated them with back pay at the rate they were receiving when suspended; and it could have reinstated them with back pay at the increased rate. See Comment, 43 Harv.L.Rev. 847, *supra;* Note, Back Pay Orders Under the National Labor Relations Act, 48 Yale L.J. 1265; Comment, Back Pay Awards Under the National Labor Relations Act, 37 Ill.L.Rev. 441. The Committee did not clearly settle the question of rate of back pay in its award. Since it did not make a final disposition of all the issues as to retroactive pay, the award of back pay was invalid.[12]

The award is valid as to reinstatement, but void as to back pay. The reinstatement provision as we have seen is severable and may therefore be enforced despite the invalidity of the provision for retroactive pay.

in this case within that time. However, the company may believe either that this is not mandatory language, or that it waived this provision by moving to reopen the case for introduction of new evidence after the case had been closed. In any event, the company does not make any contention as to this question. It seems to us, however, that adherence to such agreements would avoid troublesome questions as in the instant case of long periods of back pay.

[12] The company filed a reply to the motion of the Board to interpret the decision of the Arbitration Committee. Its opposition is based on the fact that assuming Farrulla and Torres have been unemployed since May 9, 1947, they made no showing before the Committee that they made reasonable efforts to obtain other employment. In support of its theory, the company cites cases decided by the National Board.

We cannot consider this contention of the company. In the first place, the record before the Committee is not before us. We therefore have no way of knowing whether or not Farrulla and Torres submitted testimony on this point. Secondly, even if the record were before us and were silent on this point, if the ruling of the Committee on this point had been clearly made and was therefore valid, as we have already seen we would have no authority to review on the merits questions of fact or law such as those raised by this contention of the company.

## V

■■■ The Company argues that the remedy provided by § 9 (2) (c) is insufficient. We quote verbatim the argument made by the company in support of this contention: "The remedy granted to a party under § 9 (2) (c) of the Act and which authorizes the Board at the request of a party to institute a proceeding before this Court for enforcement of an order, is inadequate and ineffective. That is because this Court does not review the case on its merits and does not consider the evidence submitted by the parties in the arbitration proceeding, even though, as in this case, the arbitrator committed an error of law in making his award. It was for this reason that the defendant here filed in the United States District Court for Puerto Rico a petition for declaratory judgment, civil No. 5210. That case is still pending in the Federal Court and will give an opportunity to all the parties for consideration of this case on the merits."

This is a somewhat puzzling argument. As we have seen in IV, the company correctly states the limited scope of our review of the arbitration award. But the company made its bed and must lie on it. Having agreed to abide by an arbitrator's award, it cannot be heard to complain that it cannot relitigate in this Court the issue decided by the arbitrator. And we are unable to see how the company would obtain in the Federal Court consideration on the merits which is denied in this Court. Under the circumstances of this case, in the absence of a Federal statute on the subject, the scope of review of an arbitrator's award by the courts is a question of local law. Our holding in IV would therefore be just as controlling in the Federal Court as it is in this proceeding. *De Castro* v. *Board of Comm'rs*, 322 U. S. 451; *Torres* v. *Roldán*, 67 P.R.R. 342, 345–6; *Pérez* v. *District Court, ante*, pp. 4, 6–7.

We close by pointing out that since the Legislature has provided for arbitration of labor disputes in a statute drawn largely from sources in continental United States, we have

concluded that in failing to spell out the rules governing arbitration the Legislature meant for us to draw those rules for arbitration from the same sources. But we suggest that it would make for certainty in this disputatious field and would be more in the tradition of the civil law if the Legislature enacted a detailed statute as so many states have done on this subject. Cf. Gregory, *supra*, p. 462, *et seq*. In the absence of such a statute, the parties may define the scope of arbitration and lay down the rules therefor in their collective bargaining and submission agreements.

The petition to enforce the arbitration award will be granted insofar as it provides for reinstatement of Torres and Farrulla. It will be denied insofar as it provides for back pay.

Mr. Justice Negrón Fernández did not participate herein.

---

MR. JUSTICE TODD, JR., dissenting.

I dissent as to the point discussed and decided under heading No. IV, which is the basic question in this case, after the matter of jurisdiction is disposed of, for the following reasons.

After both employees were acquitted in the Federal Court, the union demanded their reinstatement. The company refused alleging that after an investigation of the facts "we have concluded that Messrs. Torres and Farrulla were negligent in the performance of their duties and consequently they cannot be employed again by this company."

The only question submitted by the parties to arbitration was the following:

"The union requests reinstatement of employees . . . and also payment of their respective salaries for all the time they remain discharged. . . ."

According to the evidence submitted to the consideration of the fifth member of the Arbitration Committee, he stated the following:

"Passing on the merits of the contentions of both the workmen and the employers, they tend to show that there was negligence. *It is this question exclusively which we must consider in order to decide the complaint.* As to whether complaints committed an offensive or criminal act, it was already decided in favor of the complainants by virtue of the judgment of Judge David Chávez of the United States District Court for Puerto Rico.

"We do not see why we must state the reasons to show that complainants' negligence was properly proved. The evidence tends to prove it, and even the complainants themselves admitted it in their brief of April 12, 1948 by accepting that Armando Farrulla committed "one of the errors charged as serious in Mr. Calzada's letter and Miguel Angel Torres admits having committed 'a clerical error of those charged as simple in the letter and which warrant no penalty.' *It is quite plain that these errors are negligent acts, on account of which they were suspended by the company on January 9, 1948."* (Italics ours.)

Notwithstanding the fact that this is the sole question which, in my opinion, was submitted to arbitration—and such seems to have been the understanding of the Fifth Member—he further states:

"The Fifth Member has reached the conclusion that the charge of negligence made by the company against the complainants in its letter of January 9, 1948, *and which we have upheld inasmuch as it so appeared from the evidence and the briefs, does not warrant a final suspension as employees of the company. . . ."* (Italics ours.)

It is clear to me that the Arbitration Committee acted without jurisdiction in deciding, after having admitted that the negligence was proved, that the discharge of the employees did not lie and that it could, capriciously, fix the penalty of one-week suspension on the ground that, for other negligent acts of its employees, the company as a rule suspended them for one week. This question was not submitted to arbitration. The Fifth Member himself, at the end of the award, states:

"Since the respondent corporation has not passed upon the possible penalties to be imposed, confining itself to say that

they do not even merit reinstatement, which we have considered as somewhat drastic and arbitrary, *we have no other choice but to punish* each one of the complainants, Miguel Angel Torres and Armando Farrulla, *to one-week suspension without pay inasmuch as we are not clothed with jurisdiction to impose a more severe penalty. . . .*" (Italics ours.)

Where in the submission to arbitration in this case was it stipulated by the parties that the Committee was only clothed with jurisdiction to impose a one-week suspension without pay and that it could not impose a more severe penalty?

The language used and the conclusion reached in the arbitration award, indicate, in my opinion, that if it were to stand, an employer could at no time discharge a workman for negligent acts which have been proved, if in the opinion of the Arbitration Committee their negligence only warranted a one-week—or one-day—suspension without pay. Where negligence in the performance of work, causing a considerable loss to the company is proved, as in the present case, said negligence constitutes just cause for discharge. *Blanes* v. *District Court, ante,* p. 106. I do not agree in that the submission to arbitration in this case authorized the Committee to decide, despite the fact that the negligence was proved, that it could determine, arbitrarily, what penalty to impose. As to this point, it acted without jurisdiction. *Ríos* v. *Puerto Rico Cement Corp.,* 66 P.R.R. 446; *Simon* v. *Stag Laundry,* 18 N.Y.S. (2) 197, affirmed in 19 N.Y.S. (2) 1943 (1940) ;[1] *Application of MacMahon,* 63 N.Y.S. (2) 657, where after citing *Simon* v. *Stag Laundry, supra,* it is said: "No award can be supported by implications inconsistent with the actual facts," and here the implication that there was no

---

[1] I see no distinction at all between *Simon* v. *Stag Laundry, supra,* and the instant case. As stated in the former:

"We are unable to agree with the respondent's claim that the award made necessarily implies that the Impartial Chairman found that the discharge was unjustified. The fact that the arbitrator imposed a loss of four weeks' pay leads to no other conclusion than that the discharge was not wrongfully effected."

just cause for the discharge is inconsistent with the facts, the evidence and the conclusion of the Arbitration Committee to that effect.

In *In Re Stockham Pipe Fitting Co.* and *United Steel Workers*, 1 Labor Arbitration Reports 160 (1946), cited in the article Discharge and Discipline Cases in Labor Arbitration, 43 Illinois Law Review 847, 851, the arbitrator, sustained both discharges on the ground that the company had made a fair investigation before discharging the men and that in the absence of a clear showing of discrimination or abuse of discretion it would be a "usurpation of the functions of management" for the arbitrator to substitute his judgment for that of the management, even though he may consider the penalty too severe. And this was precisely what the Committee did in the instant case, to usurp the functions of the management on a question which was not submitted to it, thereby acting without jurisdiction. Since I have come to the conclusion that the reinstatement of the employees does not lie, *a fortiori* they are not entitled either to retroactive pay.

It is my opinion that the petition should be denied.

---

ON RECONSIDERATION

May 24, 1949.

Mr. Justice Snyder delivered the opinion of the Court.

In our opinion of March 31, 1949 in this case, *ante* p. 730, we granted the petition of the Labor Relations Board to enforce an arbitration award insofar as it provides for reinstatement of two checkers of The New York & Porto Rico Steamship Company; but we refused to enforce that provision of the award which calls for back pay from May 9, 1947, the date these employees were suspended. The Board has moved for reconsideration of the portion of our judgment refusing to enforce the award as to back pay. It now accepts our ruling that back pay could not be validly awarded from the date of suspension. But it contends that we should modify our judgment by providing for back pay from the date of discharge on January 9, 1948. Its theory is that the Arbitration Committee could have validly made such an award, which is severable from the provision for back pay from May 9, 1947. We have nothing to add to our opinion in this respect, and will therefore deny the motion for reconsideration.

However, in arguing its motion, the Board points out that our opinion is silent as to whether these two employees are entitled to back pay from the date of the award on June 21, 1948 to the date of reinstatement pursuant to our judgment. We think the answer is obvious. Such back pay follows from affirmance by us of an arbitrator's award of rein-

statement. The award herein is not ours. It is the Committee's, and it was made on June 21, 1948. When it is enforced, it is therefore enforced as of that date. To hold otherwise would permit employers to use the delays of litigation as a device to postpone for months the effective date of an award validly providing for reinstatement. Our judgment affirming the award of reinstatement therefore means that the company is not only obligated to reinstate these employees, but also to pay them the salaries they have failed to receive since the date of the award on June 21, 1948. Application of Devery, 41 N.Y. 2d 293, affirmed in 55 N.E. 2d 370 (N.Y., 1944).

■ The company might contend that we should not reach this conclusion because it was entitled to resist the award insofar as it provided improperly for back pay from May 9, 1947. But, as we pointed out in our original opinion, the provisions for reinstatement and back pay are severable. If the company had desired to challenge only the invalid provision for back pay, it could have reinstated these employees without complying with the award of back pay. Having deliberately chosen to resist the valid award of reinstatement, the company cannot complain if it is enforced as of the date it was made.

■■ We think it appropriate to point out that in holding that the award will be enforced as of the date it was issued, we are not modifying the views expressed in our original opinion that the award of back pay lacked entirety because it did not indicate the rate thereof. At that stage of the case, the Committee was empowered to use different formulae on the issue of back pay. Its failure to make clear which formula should be used was one of the reasons which made the award defective. Our function in implementing the provision for reinstatement is different. Unlike an arbitrator, under these circumstances we have no discretion to consider the various possibilities in connection with back pay

or the rate thereof. We simply enforce the provision for reinstatement as of the date of the award. This carries with it back pay for the employees as though they had been employed as checkers in the usual form by the company from the date of the award to the date of reinstatement.

Just as in unfair labor practice orders where provision is made for back pay, the exact amounts due may be determined by use of the administrative machinery of the Board, with the cooperation of the employer, whose payrolls will serve as a basis for the final computation. See *Rivera* v. *Labor Relations Board et al.*, 70 P.R.R. In this connection, deduction must be made not only of the actual net earnings, if any, of these employees elsewhere during the period involved, but also of the amounts, if any, which they failed without excuse to earn in other available employment. *Phelps Dodge Corp.* v. *N.L.R.B.*, 313 U. S. 177, 197–200; *N.L.R.B.* v. *Bird Machine Co.*, F. (2) (C.A. 1, May 12, 1949); *N.L.R.B.* v. *Draper Corp.*, 159 F. (2) 294, 297 (C.C.A. 1, 1947); *Wallace Corp.* v. *N.L.R.B.*, 159 F. (2) 952 (C.C.A. 4, 1947); *Berkshire Knitting Mills* v. *N.L.R.B.*, 139 F. 2d 134, 141–2 (C.C.A. 3, 1943); *Mine Workers* v. *Eagle-Picher Co.*, 325 U. S. 335. See generally, 2 C.C.H. Labor Law Reporter, 4th ed., § 4755, p. 4979 *et seq.;* Comment, 37 Ill.L.Rev. 441; Note, 48 Yale L.J. 1265.

The motion for reconsideration will be denied.

Mr. Justice Todd, Jr. dissented insofar as in the opinion on reconsideration the right of employees to back pay from the date of the award is made to depend on the fact that the award "validly" decreed their reinstatement and on the fact that the Company deliberately chose "to resist the valid award of reinstatement," because said Justice is consistently of the opinion that the award is erroneous and hence it could not validly order the reinstatement of the employees.

Mr. Justice Negrón Fernández did not participate herein.